FINNEGAN, Appellant, vs. EAGLE PRINTING COMPANY, Respondent.

*October 22—November 16, 1920.*

*Libel: Derogatory matter: Defenses: Repeating statements of third persons: Reports of judicial proceedings: Publication of pleadings and preliminary papers: Privilege: Comment on acts of public officers: Demurrer: Good in part: Effect.*

1. Publication of language which tends to injure one in his reputation and to degrade and disgrace him in society is libelous.
2. In an action for libel against a newspaper it is no defense that the newspaper only published statements communicated to it by a third person.
3. Great freedom is allowed to parties in stating in their pleadings the facts relied on to establish their rights; but the publication of pleadings or other preliminary papers to which the attention of no judicial officer has been called and no judicial attention invited, is not privileged.
4. Publications containing insulting, contemptuous phrases or false and libelous statements of fact are not privileged, even though they concern the acts of public officers.
5. The defense of privilege or fair criticism and proper comment is not available in an action for libel brought by the plaintiff, who is a private citizen and not a public officer or a candidate for office, and is not a member of any class seeking and inviting public patronage.
6. In a libel action, where a third defense setting up privilege referred to the second defense setting up justification and

made such second defense a part of the third defense, a de-
murrer to the latter on the ground that the facts alleged did
not show privilege cannot be sustained, since the court can-
not disregard the incorporation of the second defense into the
third nor treat it on demurrer as mere surplusage.

APPEAL from an order of the circuit court for Mari-
nette county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

This is an appeal from part of an order which overrules
plaintiff's demurrer to the third defense in the answer set-
ting up privilege.

After formal allegations the complaint. alleged that the
deputy sheriff of Marinette county and E. B. Martineau,
one of the attorneys for the plaintiffs in certain suits which
had been brought by them, came to plaintiff's home and
stated that they intended to seize certain furs, but served
no process; that the furs were the property of the plaintiff's
wife and they so informed the deputy and Mr. Martineau;
that the plaintiff, by telephone, advised with an attorney,
who advised him and Martineau that the furs could not be
legally seized upon an attachment against the plaintiff; that
on March 29, 1917, said Martineau and deputy returned
with other deputies and carried away the property on writs
of attachment; that on that day the defendant newspaper
published concerning the plaintiff the following false and
defamatory matter:

*"Furs are held at county jail.   Secured on attachment
against P. T. Finnegan of Middle Inlet—Many
deputies needed.*

"Seventy-five furs, variously estimated to be worth from
$1,000 to $1,300, are being held at the Marinette county
jail on attachment proceedings against *P. T. Finnegan,* a
logger of Middle Inlet.   The attachment was secured
through attorneys Martineau, Evert & Martineau for four
different parties.

"Attorney Bird Martineau and Undersheriff Herman
Hartwig, together with several deputies, returned from
Middle Inlet late yesterday with the furs.

"The first trip made to Middle Inlet by Undersheriff Hartwig and Attorney Martineau was fruitless, according to a statement made this morning by Bird Martineau. 'When we arrived at Middle Inlet,' said Attorney Martineau, '*Finnegan* called up his attorney, James C. Morgan of Wausaukee, and the latter advised his client to shoot us rather than give us the furs. We believed *Finnegan* would do this and determined to come back to Marinette for reinforcements.' 'On the next trip,' Attorney Martineau continues, 'We took several deputies with us and got the furs.'

"The three attachments were made on the furs by the local attorneys for O. G. White of Amberg; H. S. Duquaine of Crivitz; B. H. Gahagen of Rock Island, Illinois, and an execution was secured for H. P. Christ of Wausaukee. The total claims, which are for goods said to have been sold to *Mr. Finnegan,* are estimated to aggregate $1,500.

"*Finnegan* is charged by the local attorneys with concealing the furs with intent to defraud the creditors."

The defendant served an answer setting up general denial, justification, and the defense of privilege. The plaintiff demurred to the portion of the answer pleading privilege. There had also been an order striking out certain portions of the answer. Thereupon an amended answer was served, consisting of a single admission, and as a first defense a general denial, as a second defense a justification, and as a third defense privilege was pleaded. This portion of the answer was as follows:

"It alleges further that said undersheriff, on said 29th day of March, 1917, attempted to levy upon and seize said furs as the property of said plaintiff upon a judgment that had been duly taken against said plaintiff by one H. P. Christ in the circuit court for Marinette county, and wherein the said circuit court had due jurisdiction thereof and had issued execution to said sheriff for the purpose of having said judgment satisfied out of the goods and chattels of said plaintiff, who was charged by the attorneys for said H. P. Christ, the said judgment creditor, and the plaintiffs in said actions where said writs of attachment were issued, with having assigned, conveyed, disposed of, and concealed

his property and being about to assign, convey, dispose of, and conceal his property, including said furs, with intent to defraud his creditors.

"That this defendant, as the publisher of said newspaper, believing that the facts hereinbefore set forth were true, without malice or any intent to injure plaintiff, but for the sole purpose, according to its established policy, of letting its readers and the public know about court proceedings in said Marinette county and the acts of its officers, including said sheriff, in the performance of their duties and their failures therein with reference to official acts, published said article in said newspaper."

As part of the third defense this allegation was made:

"For its third defense, this defendant refers to its second defense and makes it a part hereof with the same force and effect as if re-alleged herein."

In the third defense there was also the following language:

"And in mitigation of any damages to which the plaintiff might otherwise appear entitled by reason of the publication of said supposed libelous article, this defendant repeats and renews all and singular the matters stated in its several defenses herein set forth and will give evidence thereof in mitigation of damages as well as in justification and privilege."

Thereupon a stipulation was made between attorneys reciting some of the former proceedings and agreeing that the amended answer should stand as defendant's answer, and that a demurrer and motion then served should stand, and that the order entered on plaintiff's first demurrer and motion be considered as vacated, and that the court should enter an order based upon the annexed demurrer and motion and on said amended answer as if said first order had not been entered.

At this stage of the proceeding the plaintiff again filed a demurrer to the third defense on the ground that it did not state facts sufficient to constitute a defense. There was

combined with this a motion to strike out a few words in the second defense.

After argument the court entered an order overruling the demurrer to the third defense, also denying the motion to strike out a few words in the second defense.

For the appellant there were briefs by *Minahan, Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *E. M. Duquaine.*

For the respondent there was a brief by *Martineau & Martineau* of Marinette, and oral argument by *P. A. Martineau.*

JONES, J. It is very clear that the publication complained of is libelous *per se.* It is a publication of language which tended to injure the plaintiff in his reputation and to degrade and disgrace him in society, and by a long line of decisions in this state such a publication is libelous.

It is urged that the newspaper only published statements communicated to it by a third person and that hence the publication is not libelous. But it seems well settled that this is no defense. Newell, Slander & L. (3d ed.) p. 425; *Haines v. Campbell,* 74 Md. 158, 21 Atl. 702; *Brewer v. Chase,* 121 Mich. 526, 80 N. W. 575; *World P. Co. v. Mullen,* 43 Neb. 126, 61 N. W. 108; *Dole v. Lyon,* 10 Johns. (N. Y.) 447.

We are convinced that no privilege is pleaded in the part of the answer demurred to. It is argued by respondent that it comes within the class of publications privileged as a report concerning judicial proceedings. Part of sec. 4256a, Stats., is as follows:

"The proprietor, publisher, editor, writer or reporter upon any newspaper published in this state shall not be liable in any civil action for libel for the publication in such newspaper of a true and fair report of any judicial, legislative or other public official proceeding authorized by law or of any public statement, speech, argument or debate in the course of such proceeding."

. Doubtless the execution and writs of attachment were issued in the usual formal manner without having been drawn to the attention of the court.

Great freedom is allowed to parties in stating in their pleadings the facts relied on to establish their rights. Otherwise they would often be denied redress for their grievances. But it is not necessary to the administration of justice that a party who is thus privileged should cause charges or accusations he may make in his pleadings to be published to the world. Nor is it necessary that others should publish them before they have been brought to the attention of the court. Until that time the publication cannot be said to be a report of judicial proceedings. This was the rule at common law and has not been changed by statute. In a very full and able opinion by Mr. Justice Dodge in *Ilsley v. Sentinel Co.* 133 Wis. 20, 27, 113 N. W. 425, the court said:

"Unless obvious beyond reasonable doubt, we should be slow to believe in an intent to authorize and privilege publications so fraught with injury to individuals and for which justification in public policy or other reason is so entirely wanting. We do not find such purpose obvious, and therefore cannot think that the legislation in question goes beyond the rule of the common law in sheltering a report of any step in an action which does not in some way involve at least the attention and invited action of some judicial officer."

It is true the writs of attachment contained the name of the judge and were issued by the clerk with the seal of the court. The execution was signed by the attorney for the judgment creditor. Presumably the affidavit for attachment was signed by the plaintiff in the suit or by his attorney. We see no reason why any greater latitude should be given to the publication of these documents than to the publication of a complaint. The rule is well established in this state that the publication of pleadings or other preliminary papers to which the attention of no judicial officer has been called and no judicial attention invited is not privileged.

Finnegan v. Eagle Printing Co. 173 Wis. 5.

This rule would be of little effect if the contents of such documents could be given to the world under the pretense that in serving them a sheriff is a judicial officer or is acting in a judicial proceeding.

It is claimed by respondent's counsel that the acts of the sheriff in serving process were matters of such public concern as to be privileged. There is of course a large class of cases where publications are privileged or conditionally privileged because they relate to matters in which the public are interested. An English judge stated the rule somewhat broadly when he said:

"A clergyman with his flock, an admiral with his fleet, a general with his army, and a judge with his jury, are all subjects of public discussion. Whoever fills a public position renders himself open thereto. He must accept an attack as a necessary though unpleasant appendage to his office." *Kelly v. Sherlock,* L. R. 1 Q. B. Cas. 686.

But it is the law of this state that publications even concerning the acts of public officers containing insult, contemptuous phrase, or false and libelous statements of fact, are not privileged. *Putnam v. Browne,* 162 Wis. 524, 155 N. W. 910; *Buckstaff v. Viall,* 84 Wis. 129, 54 N. W. 111.

But the libelous language in this case was not written of a public officer but of a private citizen, and it is a private citizen who brings the action. On this subject it suffices to quote the language of Mr. Justice BARNES in *Pfister v. Milwaukee Free Press Co.* 139 Wis. 627, 121 N. W. 938:

"Neither do we think the defense of 'privilege' or 'fair criticism and proper comment' was permissible in this case. The plaintiff held no office and was not a candidate for any. Neither did he belong to any class which by seeking and inviting public patronage renders itself amenable to public comment and criticism which could not rightly be applied to a private citizen. It appears that the plaintiff is a private citizen, and a false and defamatory publication concerning such a one is not privileged merely because it may relate to some public matter."

Having decided that the publication was libelous and that it was not privileged, we regret that the state of the pleadings is such that we cannot sustain the demurrer. The second defense sets up at some length a justification. The third defense, which is demurred to, refers to the second defense and "makes it a part hereof with the same force and effect as if re-alleged herein." We cannot disregard this incorporation of the second defense into the third nor treat it on demurrer as mere surplusage. Hence the order must be sustained.

*By the Court.*—The order of the court is affirmed.