RANOUS, Respondent, v. HUGHES, Appellant.

*March 1—April 12, 1966.*

454

458

For the appellant there were briefs by *Milo G. Flaten* and *Huiskamp, Brewster & Flaten,* all of Madison, and oral argument by *Milo G. Flaten.*

For the respondent there was a brief by *La Follette, Sinykin, Anderson, Davis & Abrahamson,* attorneys, and *A. Roy Anderson* of counsel, all of Madison, and oral argument by *A. Roy Anderson.*

CURRIE, C. J. Appellant-defendant contends that it was error not to have granted his motion for summary judgment because:

(1) The letter was not defamatory.

(2) He was not responsible for the publication of the letter.

(3) Plaintiff consented to the publication of the letter.

(4) The letter represented an act of the board of education for which defendant cannot be held liable as an individual.

(5) The letter is either absolutely or conditionally privileged.

While it is necessary to pass upon all of the above five grounds claimed to bar plaintiff's action as a matter of law, it is the fifth ground which has been argued most strenuously by defendant. It is also this fifth ground which we deem merits the greatest consideration of this court.

### Was letter defamatory?

In the recent case of *Lathan v. Journal Co.*[1] we quoted with approval the Restatement test of defamatory which is:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[2]

We commend this test for its conciseness as well as its accuracy. The reference in the letter to plaintiff's unpatriotic attitude and her intemperate and offensive behavior falls within this definition. Furthermore, plaintiff's profession is that of a teacher and the letter certainly would tend to deter school authorities contemplating hiring a teacher of her qualifications from employing her. This facet of defamation is embraced within that part of the above definition which states, "or to deter third persons from . . . dealing with him."[3]

---

[1] Ante, p. 146, 140 N. W. (2d) 417.

[2] Restatement, 3 Torts, p. 140, sec. 559. *Lathan v. Journal Co., supra,* also cited with approval Prosser, Law of Torts (hornbook series, 3d ed.), p. 756, sec. 106, and *Scofield v. Milwaukee Free Press Co.* (1905), 126 Wis. 81, 85, 105 N. W. 227. Also see *Judevine v. Benzies-Montanye Fuel & Warehouse Co.* (1936), 222 Wis. 512, 517, 269 N. W. 295; *Finnegan v. Eagle Printing Co.* (1920), 173 Wis. 5, 9, 179 N. W. 788; and *Leuch v. Berger* (1915), 161 Wis. 564, 570, 155 N. W. 148.

[3] With respect to alleged defamatory matter which directly tends to prejudice one in his business or profession, see *Walters*

We find no merit in defendant's contention that the letter was not defamatory.

*Responsibility of defendant for publication of letter.*

Publication is defined in the Restatement as follows:

"Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." [4]

Defendant contends that the only publication of the letter for which he is responsible is the delivery of copies thereof to Principal Wagner and Superintendent Kromrey, and they had such an interest in the letter because of their official position as school officials as to cloak such delivery to them with privilege. He denies any responsibility for the reading of the letter by Wagner to the teachers of the Parkside Heights school.

The record on the motion for summary judgment substantiates defendant's contention that he was not responsible for Wagner's reading of the letter to the teachers of the school in which plaintiff had been teaching. Both Wagner and Kromrey by affidavit stated that defendant did not order, request, or consent to Wagner's reading of the letter to the teachers. The only rebutting evidence is plaintiff's testimony in her adverse examination deposition that she was told by other unnamed teachers that defendant had requested or ordered the letter to be read to the teachers. In *Forbus v. La Crosse* [5] this court held that a party standing in plaintiff's position, who opposes a motion for summary judgment, cannot rely upon a hearsay affidavit based on information and

---

*v. Sentinel Co.* (1918), 168 Wis. 196, 201, 169 N. W. 564; *Downer v. Tubbs* (1913), 152 Wis. 177, 180, 139 N. W. 820; *Singer v. Bender* (1885), 64 Wis. 169, 172, 24 N. W. 903. Also see Restatement, 3 Torts, p. 168, sec. 569, comment *e.*

[4] Restatement, 3 Torts, p. 192, sec. 577.

[5] (1963), 21 Wis. (2d) 171, 174, 175, 124 N. W. (2d) 66. See also *McChain v. Fond du Lac* (1959), 7 Wis. (2d) 286, 291, 96 N. W. (2d) 607, and *Edwards v. Gross* (1958), 4 Wis. (2d) 90, 95, 96, 90 N. W. (2d) 142.

belief, and outlined two alternative procedures which such person could have followed which would have been sufficient to defeat summary judgment. One would be for plaintiff to have taken the depositions of the informants, if such informants refused to give affidavits. The other would be for plaintiff to have stated in an affidavit the names of her informants, that these informants had refused to give affidavits, the reason for not taking depositions, and set forth the statements these informants had given her and that she expected they would give such testimony at the trial.

However, defendant did cause delivery of copies of the letter to Wagner and Kromrey. This publication would be sufficient upon which to ground an action for libel if not privileged. Thus whether there was the requisite element of publication by defendant turns on whether or not this delivery to Wagner and Kromrey was privileged. This question will be hereinafter dealt with in connection with our consideration of the privilege issue.

### Plaintiff's consent to publication.

There is no dispute that plaintiff is the one who disclosed the letter to the Capital Times and also portions thereof to one or more radio stations. There are no facts suggesting that this was done by her in order to correct erroneous information already in the possession of these news media. If this were the only publication of the letter defendant would not be liable. The Restatement states:

"Except as stated in sec. 584, the publication of false and defamatory matter of another is absolutely privileged if the other consents thereto." [6]

The exception stated in sec. 584 deals with the republication of defamatory matter made in response to inquiries which the person defamed has made to ascertain

---

[6] Restatement, 3 Torts, p. 220, sec. 583. See in particular Illustration 2, p. 222, under comment d.

the source of defamatory rumors which are current concerning him.

However, if the publication by defendant to Wagner and Kromrey was not privileged, the fact that plaintiff consented to publication by the news media would not bar the action but would only be relevant to the issue of mitigation of damages. There is no claim made by defendant that plaintiff consented to the publication made by defendant to Wagner and Kromrey.

## Did Board's action isolate defendant from individual liability?

Because sec. 40.41 (2), Stats.,[7] required majority action of the board of education in order to discharge plaintiff, and the board did on December 9, 1963, ratify its prior informal action of December 1st and the delivery of the letter, defendant contends that the letter was not his action, but constitutes the action of the board. Defendant relies upon *Corrao v. Mortier,*[8] *Clausen v. Eckstein,*[9] and *Meyer v. Carman.*[10]

All three cited cases sought to hold a defendant public officer liable in damages for failure to perform a nonministerial duty and in each of these cases plaintiff was unsuccessful. The governing principle is stated in a quotation from 67 C. J. S., Officers, p. 418, sec. 125, set forth in *Corrao v. Mortier*[11] as follows:

"In the absence of statute expressly imposing such liability, a public officer who is a member of a corporate or governmental body on which a duty rests cannot be held liable for the neglect of duty of that body if he acts

[7] This statute in part provides, "No teachers shall be employed or dismissed except by a majority vote of the full membership of the managing body or board."

[8] (1959), 7 Wis. (2d) 494, 96 N. W. (2d) 851.

[9] (1959), 7 Wis. (2d) 409, 97 N. W. (2d) 201.

[10] (1955), 271 Wis. 329, 73 N. W. (2d) 514.

[11] *Supra,* footnote 8, at page 499.

in good faith. If there is a refusal, neglect, or failure with respect to the exercise of the power or discharge of the duties of such body, it is the default of the body, and not of the individuals composing it."

However, the black-letter wording of this same section of 67 C. J. S., Officers, states:

"Ordinarily a public officer is not liable in a private action for acts performed in good faith within the scope of his authority. He may, however, be held liable for injuries resulting from his torts." [12]

In the body of the text of this same section, immediately after the quotation in *Corrao v. Mortier,* the following appears:

"However, it has been held that the illegal act or omission of a public board or corporation is the act of those members who actually participate in its consummation, and such members may be held personally liable for the resulting damage." [13]

We are satisfied that a member of a public board who actively participates in the commission of a tort, such as publishing a libel, cannot escape liability therefor by claiming it was the result of board action for which he cannot be held individually liable. The problem is closely akin to that presented in the recent case of *Purtell v. Tehan* [14] wherein it was held that an agent who does an act which is otherwise a tort cannot escape liability therefor by the fact that he acted at the command of his principal.

### *Absolute or conditional privilege.*

Defendant contends initially that he cannot be sued for libel because as a "public official" he is absolutely immune from such an action. It is a general rule that

---

[12] 67 C. J. S., Officers, p. 417, sec. 125.

[13] Id. at page 418.

[14] (1966), 29 Wis. (2d) 631, 639, 139 N. W. (2d) 655.

absolute privilege is accorded principal federal or state executive officers in the exercise of their duties.[15] However, when considering the lower strata of executive officials such as defendant the majority of courts have concluded that such officials are not entitled to an absolute privilege, but only a conditional privilege, although there are authorities according absolute privilege to minor officials.[16] The Restatement rule is that inferior officers of the state or nation are protected by only a conditional privilege.[17]

Defendant cites two recent United States supreme court cases and other cases which allegedly indicate that the "public official" designation now extends to an official of appellant's status. These cases are *New York Times Co. v. Sullivan,*[18] *Rosenblatt v. Baer,*[19] *Walker v.*

[15] Restatement, 3 Torts, pp. 238, 239, sec. 591; Prosser, Law of Torts (hornbook series, 3d ed.), pp. 801–804, sec. 109; 1 Harper and James, Law of Torts, pp. 429, 430, sec. 5.23; also see *Engelmohr v. Bache* (Wash. 1965), 401 Pac. (2d) 346, 347; and *Barr v. Matteo* (1959), 360 U. S. 564, 79 Sup. Ct. 1335, 3 L. Ed. (2d) 434.

[16] Prosser, Law of Torts (hornbook series, 3d ed.), pp. 801–803, sec. 109; also see 1 Harper and James, Law of Torts, p. 429, sec. 5.23; and Anno. Libel and slander: statements or utterances by member of municipal council, or of governing body of other political subdivision, in course of official proceedings, as privileged, 40 A. L. R. (2d) 941.

[17] Restatement, 3 Torts, p. 239, sec. 591, comment *d*. Also see *Tanner v. Stevenson* (1910), 138 Ky. 578, 128 S. W. 878, in which a superintendent of schools was not allowed to claim absolute privilege but was held to be entitled only to a conditional privilege. A similar result was obtained in *Barry v. McCollom* (1908), 81 Conn. 293, 70 Atl. 1035, although it does not appear whether the superintendent in that case raised the question of absolute privilege. In *Samuelson v. Vinyard* (1926), 120 Or. 197, 251 Pac. 719, a school board's action was held to be conditionally privileged although again there is no indication that absolute privilege was argued.

[18] (1964), 376 U. S. 254, 84 Sup. Ct. 710, 11 L. Ed. (2d) 686.

[19] (1966), 383 U. S. 75, 86 Sup. Ct. 669, 15 L. Ed. (2d) 597.

*Courier-Journal and Louisville Times Co.,*[20] and *Gilligan v. King.*[21] However, in these cases the courts were confronted with a public official or a public figure suing a private citizen for libel, not a private citizen suing a public official for libel. By footnote in *Rosenblatt v. Baer,* the United States supreme court made it clear that the *New York Times* decision did not deal with the issue of delineating which public officials qualify for absolute privilege when sued by a private citizen for libel. This footnote stated,

"For similar reasons, we reject any suggestion that our references in *New York Times,* 376 U. S., at 282, 283, n. 23, and *Garrison,* 379 U. S., at 74, to *Barr v. Matteo,* 360 U. S. 564, mean that we have tied the *New York Times* rule to the rule of official privilege. The public interests protected by the *New York Times* rule are interests in discussion, not retaliation, and our reference to *Barr* should be taken to mean no more than that the scope of the privilege is to be determined by reference to the functions it serves. See Pedrick, Freedom of the Press and the Law of Libel: The Modern Revised Translation, 49 Cornell Law Quarterly, 581, 590–591 (1964)." [22]

In determining the scope of the privilege to be accorded public officials while acting in an executive or administrative capacity [23] competing values exist: (1) Of insuring that government officials not to be deterred from performing their public duties in fear of being held individually liable for what they may say or publish, and (2) of protecting private citizens from having their private or professional reputations damaged by defamatory matter uttered or published by public officials. Giving due weight to these competing values, we feel that

[20] (D. C. Ky. 1965), 246 Fed. Supp. 231.

[21] (1965), 48 Misc. (2d) 212, 264 N. Y. Supp. (2d) 309.

[22] 383 U. S. 75, 84, 86 Sup. Ct. 669, 675, 15 L. Ed. (2d) 597, 605.

[23] For the absolute privilege accorded judicial officers and legislators, see Restatement, 3 Torts, p. 225, sec. 585, and p. 236, sec. 590.

with respect to all but executive officers in the higher echelons of government the according of conditional privilege rather than absolute privilege is preferable. Therefore we conclude that school board members do not fall within the category of high ranking executive officials of government whose defamatory acts should be accorded absolute privilege. We also conclude, however, that the defense of conditional privilege is available to defendant.

In the instant case defendant's office of director of the board of education is equivalent to that of chairman. His participation in the board function of discharging a teacher, of which the sending of the letter was a part, ordinarily would constitute performance of official duty which would accord conditional privilege to the contents of the letter. We accord no significance to the fact that the members of the board, prior to sending of the letter, had acted informally and not by formal meeting, and later ratified such action in the formal meeting of December 9th. Defendant and other board members were clearly attempting to perform the duties of their offices. The conditionally privileged status of the letter does not depend upon whether they as laymen strictly followed the statutory procedural requirements for transacting board business.

The defense of conditional privilege may be lost if certain conditions do or do not occur. In *Hett v. Ploetz* this court stated, "The privilege is said to be 'conditional' because of the requirements that the declaration be reasonably calculated to accomplish the privileged purpose and that it be made without malice." [24]

The use of the word "malice" in connection with conditional privilege is probably unfortunate. Prosser, in

[24] (1963), 20 Wis. (2d) 55, 59, 121 N. W. (2d) 270. Also see *Johnson v. Rudolph Wurlitzer Co.* (1928), 197 Wis. 432, 440, 222 N. W. 451; *Fitzgerald v. Piette* (1923), 180 Wis. 625, 631, 632, 193 N. W. 86; and *Gerlach v. Gruett* (1921), 175 Wis. 354, 359, 185 N. W. 195.

discussing conditional privilege as a defense in defamation suggests that "malice" is a meaningless and quite unsatisfactory term.[25] The Restatement avoids entirely the use of the word malice. Instead it talks in terms of the abuse of the privilege which causes its loss and states:

"One who publishes false and defamatory matter of another upon a conditionally privileged occasion is liable to the other if he abuses the occasion." [26]

The Restatement further lists the four conditions which may constitute an abuse of the privilege, and the occurrence of any one causes its loss. These are: (1) The defendant either did not believe in the truth of the defamatory matter or, if believing the defamatory matter to be true had no reasonable grounds for so believing; [27] (2) because the defamatory matter was published for some purpose other than that for which the particular privilege is given; [28] (3) because the publication was made to some person not reasonably believed to be necessary for the accomplishment of the particular privilege; [29] or (4) because the publication included defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the privilege is given.[30]

With respect to condition (2) the Restatement comments as follows:

---

[25] Prosser, Law of Torts (hornbook series, 3d ed.), p. 822, sec. 110.

[26] Restatement, 3 Torts, p. 263, sec. 599.

[27] Id. pages 264, 265, secs. 600, 601. See also Prosser, Law of Torts (hornbook series, 3d ed.), p. 822, sec. 110. Cf. *New York Times Co. v. Sullivan, supra,* footnote 18 at page 280, in which malice was defined as " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

[28] Id. pages 268, 269, sec. 603. See also Prosser, *supra,* page 822, sec. 110.

[29] Id. pages 269, 270, sec. 604.

[30] Id. page 274, sec. 605. See also *Hett v. Ploetz, supra,* footnote 24, at page 59.

"Thus, a publication of defamatory matter upon a privileged occasion if made solely from spite or ill will is an abuse and not a use of the occasion. However, if the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the occasion." [31]

There is nothing in the record before us which would substantiate a finding that the privilege was lost because abused with respect to condition (2). The parties had never met each other prior to the delivery of the letter, and the record is barren of any fact giving rise to an inference that the letter was written for any other purpose than notifying plaintiff of her discharge and the reasons therefor. The privilege was not lost because of the abuse embraced in condition (3). As previously pointed out herein, upon the record made on the motion for summary judgment, the only persons to whom defendant authorized publication were the school principal and school superintendent. Their supervisory position over plaintiff would reasonably entitle them to copies of the letter of discharge.

However, we are not satisfied that the state of the record is sufficient to warrant disposition by summary judgment of conditions (1) and (4). The written reports to defendant by Principal Wagner and Superintendent Kromrey of their investigation into the conduct of plaintiff on the afternoon of November 22, 1963, are not part of the record. They would be very material on the issue of whether defendant believed the defamatory matter in the letter to have been true or whether he had reasonable grounds for so believing. These reports would also be material on the issue of whether the letter contained defamatory matter not reasonably believed to be essential in stating the reasons why plaintiff was being discharged.

[31] Id. page 269, sec. 603, comment *a*.

We do not hold that after trial and the production of further evidence there necessarily will be issues to submit to the jury. However, if a special verdict is submitted embracing the issue of conditional privilege, we recommend avoidance of use of the word "malice," but instead submission of questions framed in terms of abuse of the privilege in accordance with Restatement, 3 Torts, p. 263 *et seq.*, secs. 599, 600, 601, 603, 604, 605. We omit reference to sec. 602 because it has no application to the facts of this case.[32]

For the reasons stated herein the learned trial court properly denied the motion for summary judgment.

*By the Court.*—Orders affirmed.

WILKIE, J., took no part.

[32] This section of the Restatement has to do with the unusual situation where publication of defamatory rumors or suspicions might be reasonable.