Joseph PORCELLI, Plaintiff,

v.

JOSEPH SCHLITZ BREWING COM-
PANY, a corporation, et al.,
Defendants.

Civ. A. No. 72–C–238.

United States District Court,
E. D. Wisconsin.

Aug. 13, 1975.

Robert E. Sutton, Milwaukee, Wis., for plaintiff.

Francis H. Parson, Gilbert W. Church and John S. Skilton, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a tort action in which plaintiff Joseph Porcelli seeks to recover damages for the termination of his employment with defendant Joseph Schlitz Brewing Company ("Schlitz"). Jurisdiction is present under 28 U.S.C. § 1332.

The essence of the complaint is the allegation that the defendants conspired to discharge plaintiff under a false imputation of dishonesty. The defendants have filed a motion for summary judgment supported by affidavits, parts of plaintiff's deposition transcript, and briefs. Plaintiff has filed a brief in opposition to the motion but has not filed any affidavits. For the reasons hereinafter indicated, the motion for summary judgment is granted.

### I.

Plaintiff began working for Schlitz in October 1965 as a salesman in Milwaukee, Wisconsin. In January 1970, he was promoted to the position of district representative and began receiving training from a number of district managers. Sometime in June of 1970, plaintiff was made district sales manager for the Minneapolis district. This district included most of Eastern Minnesota and Northern Wisconsin and was part of Schlitz's Northern Division. The field sales manager of the Northern Division, plaintiff's immediate superior, was J. R. Moriarity whose office was in Minneapolis, Minnesota. Moriarity's administrative assistant was Roy Smith. Moriarity was replaced by Chester R. Mulcahy[1] on January 1, 1971. The next person in the Schlitz hierarchy beyond the Northern Division field sales manager was defendant William T. Timpone, the director of field sales. Timpone, in turn, was responsible to defendant Thomas F. Roupas, the vice president for sales. Both Timpone and Roupas worked at Schlitz's home office in Milwaukee, Wisconsin.

As district manager, plaintiff was responsible for liaison between Schlitz and the eight wholesale distributors in the Minneapolis district. One of these distributors was Pete Wolff of Hudson, Wisconsin. Following a sales promotion in September 1970, during which Schlitz made payments to wholesale distributors to enable them to lower the price of beer, Wolff submitted sales and inventory reports which aroused the suspicion in the division office that Wolff had overstated the amount of beer he had sold during the promotion. Moriarity told plaintiff to check Wolff out, and plaintiff called Wolff and relayed Wolff's explanation to Moriarity. Moriarity was apparently satisfied with the explanation, since he did not request that plaintiff investigate further and did not inform Timpone that there was a problem.

Moriarity was replaced as Northern Division manager on January 1, 1971, by Chester R. Mulcahy. Mulcahy was not satisfied with plaintiff's job performance and told Timpone of his dissatisfaction at a meeting in Las Vegas on April 1, 1971. In a letter to Timpone on April 6, 1971, Mulcahy reiterated his unhappiness with plaintiff and recommended that plaintiff be transferred to a smaller district.

---

1. Mulcahy was originally a defendant in this action, but because his presence was fatal to diversity jurisdiction, he was dismissed without prejudice to plaintiff pursuant to Rule 21, Federal Rules of Civil Procedure, by an order filed May 4, 1973.

Meanwhile Wolff had submitted sales and inventory reports covering a March sales promotion which again contained apparent discrepancies. Mulcahy informed Timpone of the problem in a telephone conversation on April 7, 1971, and wrote a letter in confirmation the next day. Following an investigation and audit of Wolff's distributorship, it was determined that Wolff had been overstating his sales for some time and had consequently received overpayments in excess of $10,000 as well as a vacation trip to which he was not entitled.

At Timpone's request, a meeting was held at Schlitz's home office in Milwaukee on April 15, 1971, at which Wolff admitted falsifying his sales and inventory reports. Plaintiff was not accused of having any prior knowledge of Wolff's scheme or of being in complicity with him. Timpone did, however, tell plaintiff that he had not "done his homework" on the Wolff matter. Schlitz and Wolff later compromised, Wolff agreeing to pay back $6,000.

Some nineteen days after the Milwaukee meeting, on May 4, 1971, Mulcahy informed plaintiff that his employment with Schlitz was terminated. Plaintiff's salary and benefits were continued, however, through July 31, 1971. Schlitz did not sever its relationship with Pete Wolff, and Roupas, Timpone, Mulcahy, and Smith continued in Schlitz's employ after plaintiff's termination.

## II.

The complaint set forth two causes of action, one of them for defamation. It was alleged that the defendants "did slander the reputation of the plaintiff by wrongfully accusing him of a crime, to-wit: falsification of reports and theft, * * * ." (Complaint ¶ 20.)[2] In their affidavits filed in support of the motion for summary judgment, defendants Roupas and Timpone stated:

"[1] That at no time did anyone, expressly or by implication, declare or intimate to the affiant, that plaintiff condoned, aided, abetted, conspired in, participated in, or in any other way actively or passively assisted Wolff in submission of the false reports and/or in Wolff's derivation of benefits as a result thereof.

"[2] That at no time has the affiant, expressly or by implication, declared or intimated to anyone, within or without the Schlitz organization, that plaintiff condoned, aided, abetted, conspired in, participated in, or in any other way actively or passively assisted Wolff in submission of the false reports and/or in Wolff's derivation of benefits as a result thereof.

"[3] That at no time has the affiant, expressly or by implication, declared or intimated to anyone, within or without the Schlitz organization, that plaintiff has been guilty of any dishonesty or like wrongdoing in any matter other than that of the Wolff records.

"[4] That at no time did the affiant attempt to induce plaintiff's discharge by in any way declaring or intimating to anyone that plaintiff was guilty of any dishonesty or like wrongdoing in the matter of the Wolff records or in any other matter."

Mulcahy's and Smith's affidavits are identical save they do not include the statement numbered [1].

■ These affidavits were sufficient to satisfy defendants' burden of showing that there was "no genuine issue as to any material fact." Rule 56(c), Federal Rules of Civil Procedure. It therefore became plaintiff's burden to respond by setting forth the "specific facts showing

---

2. Defendants' motion for an order requiring plaintiff to make the complaint more definite and certain as to the allegedly slanderous words and their publication was denied by an order filed May 4, 1973, "in light of the defendants' opportunity for further specification through discovery."

that there is a genuine issue for trial." Rule 56(e). See *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970); *Wood v. Breier,* 66 F.R.D. 8 (E.D.Wis.1975).

Plaintiff, however, has not done this. No affidavits in opposition to the motion for summary judgment have been filed, and plaintiff's brief does not cite any place in the transcripts of their depositions where the defendants admitted making defamatory statements. Further, the transcript of plaintiff's deposition does not contain a single instance where a defamatory statement was attributed to the defendants. Since plaintiff has been unable to show that he has any evidence that the defendants uttered any words defamatory of his character or that publication occurred, the defendants' motion for summary judgment on the defamation claim is granted. *Ranous v. Hughes,* 30 Wis.2d 452, 141 N.W. 2d 251 (1966). See, Prosser, *The Law of Torts,* §§ 106, 108 (3d ed. 1964).

### III.

The heart of the other cause of action contained in the complaint is that Roupas, Timpone, and Mulcahy conspired to falsely accuse plaintiff of complicity in Wolff's falsifications so that Wolff could be exonerated, that with full knowledge of plaintiff's innocence they recommended to Schlitz that plaintiff be discharged under a false imputation of dishonesty, and that Schlitz willfully discharged plaintiff although it knew the falsity of the charges. (Complaint ¶¶ 12, 13, 14, 15.)

In ruling on the motion for summary judgment as it relates to this cause of action, a distinction must be drawn between Schlitz and the other defendants. In his deposition, plaintiff admitted that he had never signed an employment contract with Schlitz, nor had he been told that he would be employed for a definite length of time or would only be fired for cause. (Plaintiff's deposition, pp. 28–29.) Plaintiff's employment was therefore under a con-

tract terminable at will without any necessity for showing cause. *Forrer v. Sears, Roebuck & Co.,* 36 Wis.2d 388, 153 N.W.2d 587 (1967); *Koskey v. Harnischfeger Corp.,* 221 Wis. 267, 265 N. W. 583 (1936). Since Schlitz had the right to terminate plaintiff's employment, it cannot be liable on the contract. Further, no claim of tortious interference with economic relations can be made against Schlitz, since a defendant's breach of his own contract with the plaintiff is not actionable. *Pearsson v. Youngstown Sheet and Tube Co.,* 332 F. 2d 439 (7th Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964); *Ariate Compania Naviera, S. A. v. Commonwealth Tankship Owners, Ltd.,* 310 F.Supp. 416 (S.D.N.Y.1970); *Nolan v. Williamson Music, Inc.,* 300 F. Supp. 1311 (S.D.N.Y.1969); Prosser, *The Law of Torts,* § 123, at 958 (3d ed. 1964). Defendant Schlitz's motion for summary judgment on this cause of action is, therefore, granted.

Summary judgment must also be granted in favor of defendants Roupas and Timpone. Wisconsin law recognizes a cause of action for unlawful interference with an employment contract terminable at will. *Lorenz v. Dreske,* 62 Wis.2d 273, 214 N.W.2d 753 (1974); *Mendelson v. Blatz Brewing Co.,* 9 Wis. 2d 487, 101 N.W.2d 805 (1960); *Johnson v. Aetna Life Ins. Co.,* 158 Wis. 56, 147 N.W. 32 (1914). See also, *National Oil Co. v. Phillips Petroleum Co.,* 265 F. Supp. 320 (W.D.Wis.1966). The elements of this tort are set forth in § 766 of the Restatement of Torts:

"Except as stated in Section 698, [not relevant here] one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

"(a) perform a contract with another, or

"(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby."

See, *Purtell v. Tehan,* 29 Wis.2d 631, 139 N.W.2d 655 (1966).

In Ballantine, *Corporations,* at 255–276, § 112, it is noted that the courts have had some difficulty in adjudicating this cause of action where, as here, the individual defendants are officers or directors of the corporation and it is charged that they caused an unlawful termination of a plaintiff's employment with the corporation. Under Wisconsin law, however, directors, officers, and employees of a corporation may be liable for procuring the termination of an employment contract terminable at will where they act with an improper motive. Thus, in *Mendelson v. Blatz Brewing Co., supra,* the Court reversed an order sustaining a demurrer where the complaint alleged that the defendant-president of a close corporation conspired with another stockholder to terminate the plaintiff's employment as secretary-treasurer and general manager for the dual purposes of acquiring the plaintiff's stock for less than it was worth and employing the son of the president as manager. The Court held that while the officers of a corporation were privileged to terminate an employment in order to further the interests of the corporation, they had no privilege to do so for some collateral motive. 9 Wis.2d at 493, 101 N.W.2d 805. *Mendelson* was reaffirmed in *Lorenz v. Dreske, supra,* the Court stating that in order to state a cause of action against an officer of a corporation for unlawful interference with an employment contract terminable at will, "It is only necessary to allege that the act of procuring a breach of contract was done with an improper motive." 62 Wis.2d at 287, 214 N.W.2d at 760.

The allegation contained in paragraph 12 of the complaint—that the defendants conspired to falsely accuse plaintiff of complicity in the falsifications for the purpose of exonerating the wholesale distributors—sufficiently charges the defendants with acting with an improper motive under the rule of *Mendelson v. Blatz Brewing Co., supra,* and *Lorenz v. Dreske, supra,* since it does not appear to be in the interests of Schlitz to "exonerate" persons who falsify records and thereby garner undeserved benefits. In the answer, however, defendants denied the alleged improper motive (¶ 7) and alleged that plaintiff was terminated for cause (¶ 10). In an affidavit filed in support of the motion for summary judgment, defendant Timpone substantiated this by stating that he "directed plaintiff's discharge because plaintiff had demonstrated inadequate performance in his job as Minneapolis District Manager" (Timpone affidavit ¶ 6), and that he "believed that plaintiff had failed to discover the falsifications in the Wolff reports and that * * * this failure * * * [was] one example of plaintiff's inadequate performance" (¶ 7). Defendant Roupas' affidavit states that he "had been informed that plaintiff was discharged because of his job performance" (Roupas' affidavit ¶ 4). Further, both Roupas' and Timpone's affidavits, as set out above in part II, generally denied the existence of any conspiracy to terminate plaintiff by falsely accusing him of complicity with Wolff.

This was sufficient to establish that plaintiff's employment was terminated because of a good faith belief that he was inadequately performing his job. The defendants have, therefore, satisfied their burden of showing that their conduct was privileged because they were acting to further the interests of Schlitz rather than for any improper collateral motive. To avoid summary judgment, plaintiff had to set forth "specific facts showing that there is a genuine issue for trial" under Rule 56(e). *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Wood v. Breier,* 66 F.R.D. 8 (E.D.Wis.1975). Plaintiff has been unable to do this, and

summary judgment must therefore be granted.

It is therefore ordered that the defendants' motion for summary judgment is granted.