A. Yale GEROL, Plaintiff-Respondent,

v.

Duane L. ARENA, Defendant-Appellant/Respondent,

POTOMAC INSURANCE COMPANY, a foreign
corporation, Defendant and Co-Appellant.

Court of Appeals

*No. 83–2386. Submitted on briefs July 23, 1985—Decided October 2,
1985.*
(Also reported in 377 N.W.2d 618.)

1

3

For the defendant-appellant/respondent, the cause was submitted on brief of *Irving W. Zirbel, Esq.* and *Paul R. Erickson, Esq.* of *Zirbel, Howard & Malone, S.C.* of Milwaukee and *Eugene Gasiorkiewicz* of *Hanson & Gasiorkiewicz, S.C.* of Racine.

For the co-appellant, the cause was submitted on the brief of *Henry A. Field, Jr.* and *James E. Bartzen* of *Boardman, Suhr, Curry & Field* of Madison.

For the plaintiff-respondent, the cause was submitted on the brief of *William F. Nelson, Robert Horowitz, Peter T. Julka,* and *Thomas M. Pyper* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Before Brown, P.J., Nettesheim and Dykman, JJ.

BROWN, P.J. The major issue is whether treble damages permitted by sec. 133.18(1), Stats., may be awarded in a lawsuit alleging a conspiracy by two or more people to injure a person's reputation or occupation under sec. 134.01, Stats. We conclude they may not.

Preliminarily, we reach sufficiency of evidence issues. In reciting the facts, we will do so in a light most favorable to the verdict. See *Meurer v. ITT General Controls,* 90 Wis. 2d 438, 450–51, 280 N.W.2d 156, 162–63 (1979). A. Yale

4

Gerol is a neurosurgeon practicing in the Racine-Kenosha area. In September, 1979, Dr. Gerol moved to Flagstaff, Arizona and began practicing there. He soon returned to the Racine-Kenosha area, however, and commenced this lawsuit.

In his pleadings, Dr. Gerol accused Racine attorney Duane Arena of maliciously conspiring with Racine-Kenosha neurosurgeon Dr. Jose Kanshepolsky to ruin Gerol's reputation and profession in Flagstaff by means of a libelous letter to various Arizona doctors, contrary to sec. 134.01, Stats.[1] Gerol claimed that he lost his privileges in a local Flagstaff hospital and was generally held in disrepute in the Arizona medical community. He claimed substantial compensatory damages and punitive damages. He also sought treble damages and payment of attorney fees under what is now sec. 133.18(1), Stats.[2] The case was tried before a jury.

Gerol's move to Arizona was followed by development of a referral pattern from other doctors (a necessary ingredient in a neurosurgeon's practice). Gerol was as busy as any other physician. Until Gerol's arrival, Flagstaff

---

[1] Section 134.01, Stats., states:

Injury to business; restraint of will. Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

[2] Section 133.18(1), Stats., states:

Any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefore and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees. Any recovery of treble damages shall, after trebling, be reduced by any payments actually recovered under s. 133.14 for the same injury.

had no neurosurgeon and all patients were sent to Phoenix.

On October 1, 1979, Arena wrote a letter to certain physicians in Arizona stating that "[f]or many years I have heard that Dr. Gerol has been hospitalized because of drug overdoses and possible suicide attempts." He also described Gerol as the "primary medical forensic witness in malpractice actions in the State of Wisconsin" and indicated that Gerol had "testified, for a fee, on behalf of numerous plaintiffs criticizing various doctors and hospitals in Wisconsin and Illinois."

Arena and Kanshepolsky harbored animosity toward Gerol for a long time. Arena told others that he was going to "follow Gerol wherever he went and get him."

Following Arena's letter, Arizona medical practitioners began an investigation. Meetings took place in which the main topic of discussion was Arena's letter. After these meetings, Gerol received no further referrals. Gerol left Flagstaff and returned to Racine-Kenosha.

The jury found that the letter was defamatory, not substantially true and not protected by a conditional privilege but was actuated by express malice. The jury also found that Arena combined with Kanshepolsky to write the letter for the purpose of willfully or maliciously injuring Gerol in his reputation or profession and that the letter caused damages to Gerol.

The jury awarded $175,000 for damages to Gerol's reputation. As for financial loss, including loss of income and employment opportunities, Gerol was awarded six cents. For punitive damages, the jury awarded $75,000. Pursuant to what is now sec. 133.18(1), Stats., the trial court trebled the total damage award of $250,000 and held Arena liable for attorney fees. Further facts will be set forth as necessary.

Arena challenges the jury's finding on various grounds. Initially, he argues that the jury had no credible

evidence to believe the letter was substantially untrue. He claims that the letter alleges only two things, both of which are true. First, it alleges that Gerol has been hospitalized for drug overdoses and possible suicide attempts. Second, it alleges that Gerol was a forensic medical witness for plaintiffs. Arena claims the first is substantially true because Gerol was hospitalized for a drug overdose and possible suicide attempt and this stands uncontradicted. As to the second, Gerol did testify for the plaintiff in all the cases listed. This too, Arena claims, is uncontradicted.

We cannot accept this analysis. While some of what Arena wrote might be true, some is not. For instance, even though there is evidence of hospitalization for one drug overdose, the letter discusses hospitalizations in the plural. Also, while there is some evidence suggestive of one possible suicide attempt, the letter speaks of plural attempts. Of Gerol's forensic pursuits, while Gerol did act as a plaintiff's witness, most of the cases involved his own patients. These distinctions are noteworthy because we are not to debate how much truth is necessary to become "substantially true." The test is, rather, how the publication would have been understood by the members of the particular community and whether that interpretation was truthful. *Westby v. Madison Newspapers, Inc.*, 81 Wis.2d 1, 7, 259 N.W.2d 691, 693 (1977). Here, the jury could have concluded that Arena represented Gerol as chronically drug dependent and as mentally unstable. In fact, there was scant evidence to support either interpretation. Likewise, the jury could reasonably have determined that the letter characterized Gerol as a "hired gun" for plaintiffs in medical malpractice actions. Since the jurors could conclude that reasonable people would understand

7

the letter in that manner and that the interpretation was substantially untrue, the jury's answer stands.[3]

Arena also claims that the jury was wrong in finding no conditional privilege. A conditional privilege excuses the maker from libel if the letter was sent for public-spirited reasons. The privilege may not be relied upon, however, if abused. *Ranous v. Hughes,* 30 Wis. 2d 452, 468, 141 N.W.2d 251, 258–59 (1966). One of the grounds for abuse of the privilege is where the defendant either did not believe in the truth of the defamatory matter or, if believing the defamatory matter to be true, had no reasonable basis for it. Id. at 468, 141 N.W.2d at 259. A second ground is where the defamatory matter is published for some purpose other than that for which the particular privilege is given, i.e., ulterior motive. Id.

The jury could reasonably have concluded that the charges made against Gerol were serious. Arena would certainly have known that the charges, if acted upon, might damage Gerol's reputation in Arizona. The jury could have concluded that Arena either concocted the rumors, knowing them not to be substantially true, or did nothing to investigate or substantiate the "rumors" he had heard, even if he believed them, so as to have a rea-

---

[3] Arena also contends that his claim to have *heard* that Gerol had been hospitalized for drug overdoses and attempted suicides was substantially true. However, proof that his statement was literally true because he indeed had heard such rumors would not constitute a defense to the defamation action. *Earley v. Winn,* 129 Wis. 291, 301, 109 N.W. 633, 637 (1906). See also *Eviston v. Cramer,* 54 Wis. 220, 223–24, 11 N.W. 556, 557–58 (1882); *Polzin v. Helmbrecht,* 54 Wis.2d 578, 584, 196 N.W.2d 685, 689 (1972). A defense of truth requires proof of the truth of the defamatory charges repeated by the defendant. Restatement (Second) of Torts § 581A comment e (1977). Arena has failed to so prove. Furthermore, at trial, the testimony as to the existence of such rumors was conflicting; the jury could reasonably have chosen to believe that no such rumors existed or that no rumors alleged the multiple episodes suggested in Arena's letter.

sonable basis for believing in their truthfulness. The jury could have concluded that Arena did not care whether they were true or not. Indeed, the evidence suggests that Arena set out to destroy Gerol and that he used the unsubstantiated rumors as his vehicle. That conclusion, apparently reached by the jury, would be sufficient to constitute abuse of the conditional privilege. The conditional privilege argument therefore fails.[4]

Having determined the preliminary matters, we now reach the major issue in the case—that being whether treble damages are awardable in ch. 134, Stats., actions.[5]

The issue has been decided in *Hauer v. Bankers Trust New York Corp.*, 425 F. Supp. 796 (E.D. Wis. 1977). There, the district court wrote that "[s]ection 133.01 provides the exclusive remedy for violations of both [sec. 133.01 and sec. 124.01, Stats.] statutes." Id. at 799. However, state appellate courts are not bound by a federal district court's interpretation of state statutes. *Brown County v. Department of Health & Social Services,* 103 Wis.2d 37, 52, 307

---

[4] Arena raises a further issue requesting a new trial in the interests of justice due to four alleged errors in evidentiary rulings. First, he claims that the testimony of one of the witnesses to the conspiracy was irrelevant. We hold that the trial court did not abuse its discretion because the witness' testimony did help show a relationship between Arena and Kanshepolsky that was more than an attorney/client relationship. Besides, no prejudice is shown. Second, a newspaper reporter testified concerning an article written in a local newspaper regarding Gerol's antidrug stance. This is relevant to rebut Arena's letter accusing Gerol of drug abuse. Third, Arena claims that testimony of Gerol's own permanent personal illness was irrelevant. Evidence indicates, however, that the illness is exacerbated by emotional distress, one of the issues in the case. Fourth, Arena argues that the trial court's exclusion of several letters offered by him at trial was error. It was within the trial court's discretion to refuse to allow them because of failure to produce them prior to trial pursuant to a bona fide request for production. All four grounds are meritless.

[5] We certified this question to the supreme court on May 8, 1985. Certification was denied on July 3, 1985.

9

N.W.2d 247, 254 (1981). We do not share the district court's interpretation.

Chapter 133, Stats., was created to prohibit any conspiracy resulting in restraint of trade. As sec. 133.01, Stats., states, the statute is designed to promote competition. Competition is the fundamental economic policy of the state. The public is not benefited by attempts to corner economic markets. See id. Treble damages and payment of attorney fees under sec. 133.18(1), Stats., are disciplinary measures. Their purpose is to give citizens the incentive to prosecute actions under ch. 133. *See Kink v. Combs,* 28 Wis.2d 65, 80, 135 N.W.2d 789, 798 (1965). By providing incentive, the legislature has some expectation that the public's interest in curbing competition will be promoted. See id.

Section 134.01, Stats., has a totally different aim. It is a measure designed to protect individuals rather than the public as a whole. Common law has long recognized that when two or more persons maliciously or willfully combine to injure another's reputation or occupation, a tort has been committed. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 259–60, 85 N.W. 1046, 1065–66 (1901). Section 134.01, previously sec. 4466(a), Stats. (1889), codified this common law concept. Id. at 261–62, 85 N.W. at 1066.

To say that a sec. 134.01, Stats., action begets a ch. 133, Stats., remedy is to say that every sec. 134.01 case has an economic basis. This is not necessarily true. For example, in *Radue v. Dill,* 74 Wis.2d 239, 246 N.W.2d 507 (1976), the defendants were alleged to have conspired to falsely accuse *Radue* of a criminal act in violation of sec. 134.01. There is no hint that the cause of action was one involving restraint of competition. Rather, it was the loss of reputation in his business that concerned *Radue. Radue* shows that there is not always a connection between ch. 133 and sec. 134.01. Thus, the reason for use of treble

damages under ch. 133 is not justified in every sec. 134.01 case.

Obviously, it is possible for a person to maliciously injure another in his or her reputation or occupation, resulting in reduced competition. The injured person may then have a cause of action under ch. 133, Stats., and sec. 134.01, Stats. That is not the case here, however. A violation of sec. 133.01 was never pled despite Gerol's claims to the contrary.[6] Even if it were pled, there is nothing to show that the conspiracy restrained economic competition or trade. Gerol's damage was loss of reputation. Chapter 133 does not have loss of reputation as its concern.

We have searched every case that has arisen under both ch. 133, Stats., and sec. 134.01, Stats. Never has any appellate court in Wisconsin allowed or even hinted that treble damages and attorney fees should be the remedy for a sec. 134.01 violation. These cases go back over three quarters of a century. We have closely studied *State ex rel. Nordell v. Kinney,* 62 Wis.2d 558, 215 N.W.2d 405 (1974), the case relied upon in *Hauer* for the conclusion reached in

---

[6] Gerol claims the following paragraph from his second amended complaint sets forth the cause of action under ch. 133, Stats.:

18. At all times material hereto, Attorney Arena acted as a member of a combination and conspiracy and otherwise has engaged in concerted activities with third parties, including Dr. Jose Kanshepolsky, with the malicious intentions set forth hereinabove.

The paragraph utterly fails to state a cause of action under ch. 133 because it alleges no conspiracy or combination in restraint of trade or commerce. Neither does this paragraph allege anything else directly or indirectly which is prohibited by other sections of ch. 133. It does allege malicious intention which is not required under ch. 133 but is required under ch. 134, Stats. Even giving the paragraph a most liberal interpretation, no reasonable mind could say that the paragraph relates to ch. 133.

11

that decision. We are satisfied that reliance upon *Nordell* was misplaced.

In *Nordell,* the plaintiff asserted claims under both secs. 133.01 and 134.01, Stats., and sought treble damages. The *Nordell* court held that "[w]hen a statute such as sec. 133.01, Stats., creates a cause of action and provides the remedy, the remedy is exclusive. The plaintiff's complaint ... is brought under sec. 133.01. ..." *Nordell* at 562, 215 N.W.2d at 407. Thus, the *Nordell* case did not hold that sec. 133.01 (the relevant portion of which is now sec. 133.18(1)) was the exclusive remedy for a violation under sec. 134.01. It held only that the plaintiff's case was under ch. 133 and relief was sought under that provision alone. *Nordell* is not supportive of the *Hauer* conclusion.

We also reach the trial court's conclusion that the legislature acquiesced in the *Hauer* decision. The general rule is that the legislature is deemed to know the law and acquiesces in a court's statutory interpretation if it does not change the statute. *Salerno v. John Oster Manufacturing Co.,* 37 Wis.2d 433, 441, 155 N.W.2d 66, 70 (1967). The trial court ruled that, while the legislature amended ch. 133, Stats., after *Hauer,* the legislature did not see fit to overrule the case. The trial court therefore held that the legislature acquiesced in *Hauer.*

We disagree. In this instance, we are not persuaded that there was acquiescence by the legislature. Over seventy-five years of Wisconsin appellate case law has never made a ch. 133, Stats., remedy the means of recompense for damages under sec. 134.01, Stats. We believe it just as likely that the legislature ignored a federal court opinion interpreting state law.

Section 133.18(1), Stats., specifically states that treble damages and attorney fees are the remedy for violations under "this chapter." (Emphasis added.) We conclude that the legislature's wording is unambiguous. The remedy is confined to violations under ch. 133. Likewise,

since the separate cause of action under sec. 134.01, Stats., is silent as to remedy, common law damages apply. The trial court's trebling of the verdict and provision for attorney fees was error.

Since we conclude that treble damages are not recoverable, we need not reach the next issue—whether punitive damages and treble damages can be recovered in the same lawsuit. We also do not reach whether insurance companies should be liable for punitive damages, as raised by Arena's insurer, Potomac. Our supreme court recently decided against Potomac's position in *Brown v. Maxey,* 124 Wis.2d 426, 447, 369 N.W.2d 677, 688 (1985).

This leaves only one remaining issue—whether Arena was providing professional services to Kanshepolsky when the letter was written. Potomac issued three policies to Arena; one of the policies was an umbrella policy covering Arena only if Arena was not rendering professional services at the time, and the jury found that Arena was not providing professional services. Potomac now claims that, as a matter of law, Arena was providing "professional services" to Kanshepolsky as defined in Arena's policy.

The term "professional services" was explained to the jury in an instruction.[7] Potomac argues that the instruc-

---

[7] The jury was instructed as follows:

Question number 1 asks whether the defendant provided professional services as a lawyer on behalf of a client in writing the letter to Dr. Helme.

A professional act or service is one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill. The labor or skill involved is predominantly mental or intellectual rather than physical or manual. The act or service must be such as requires the use or application of special learning or attainments of some kind.

In determining whether a particular act or service is of a professional nature, one must look not to the title or character of the party

---

13

tion was wrong. We will not consider this argument since all parties assented to the instruction. A reviewing court is not bound to consider the correctness of the issue if it has not been preserved as an issue on appeal. *Binder v. City of Madison,* 72 Wis.2d 613, 620, 241 N.W.2d 613, 617 (1976). Potomac also claims that because this is a question of law and not a question of fact, the court erred in submitting the issues to a jury. Since Potomac took the opposite position at trial, the issue is waived. *See Hein v. Torgeson,* 58 Wis.2d 9, 17, 205 N.W.2d 408, 413 (1973).

Potomac lastly argues that there was no credible evidence to support the jury's finding regarding the insurance coverage issue. Given the definition presented to the jury, there was credible evidence that Arena was not performing professional services for Kanshepolsky when he wrote the letter. The letter took no legal expertise to write. There is further evidence to suggest that Arena was not acting as Kanshepolsky's lawyer at the time he wrote the letter but as Kanshepolsky's friend and asso-

---

performing the act, but to the act itself. However, services performed by an attorney on behalf of a client may be considered professional services even though such services could be performed wholly or in part by non-lawyers. However, merely because one is a professional and performs a task does not make the task a professional service. The professional services of an attorney are not limited to litigation. The practice of law includes, among other things: The giving of legal advice and instruction to clients to inform them of their rights and obligations; and the preparation for clients of documents requiring knowledge of legal principles not possessed by ordinary laymen. The professional services of an attorney often combine with services which ordinarily are not classed as strictly professional, and yet the employment as an entirety in the services as a whole are to be recognized as professional. A professional does perform many tasks, however, that do not constitute professional services. Whether in any case an attorney is professionally employed depends on the relations and mutual understanding of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking. A person who acts merely as writer of a letter without more, even though a licensed attorney, is not acting as an attorney when writing the letter.

14

ciate in a mutual dislike for Gerol. The jury's verdict as to insurance coverage is upheld.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions to enter judgment consistent with this opinion. No costs to either party.