FITZGERALD, Respondent, vs. PIETTE, Appellant.

*March 6—June 5, 1923.*

*Libel and slander: Language spoken of church trustee: Charging lack of fidelity in office: Charging slovenly bookkeeping: Conditional privilege: Express malice: Excessive damages: Perverse verdict: Reduction of damages: New trial.*

1. Language tending to discredit or disparage one holding an office, in the broader sense of the term, whether in private corporations or any form of voluntary associations, is considered the same as though spoken of one who is a "public officer," as that term is generally understood.

2. Statements made by a priest to his congregation that the trustees of the congregation were "liars, hypocrites, traitors, and Judases," and that there are no books or records showing where moneys of the congregation have gone, being all part of one address, when construed together import a lack of fidelity, honesty, and integrity by plaintiff in the discharge of his duties as a trustee and officer of the congregation, and because so tending to disgrace and disparage him as such officer they are slanderous *per se.*

3. In an action for slander brought by a church treasurer against the priest, a statement by defendant that moneys collected for missions could not be accounted for does not charge misappropriation of money but only slovenly bookkeeping, and is not actionable *per se.*

4. In an action for slander, a finding by the jury of express malice takes any question of conditional privilege out of the case.

5. A verdict of $16,000, although highly excessive, was not indicative of such perversity as to require the setting aside of the entire verdict.

6. Although the trial court did not use the proper method (indicated in *Gerlach v. Gruett,* 175 Wis. 354) in fixing the amount of damages for which the plaintiff, and upon his refusal the defendant, might elect to have judgment entered or a new trial granted, this court will, under sec. 2405*m*, Stats., direct the entry of the amount deemed to be proper in this case.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Modified and affirmed.*

The defendant in this action was appointed rector of the Catholic Church of St. Rose's parish, Racine, Wisconsin, on May 27, 1921. The plaintiff is forty-one years of age; had held for a number of years the position of sealer of weights and measures in the city of Racine, and was elected a trustee of St. Rose congregation in February, 1910. He served as such and as treasurer until July 12, 1921, and thereafter became secretary instead of treasurer and was such trustee and secretary at the commencement of this action January 24, 1922.

The complaint in this action for slander set forth two alleged causes of action: one for words spoken July 31, 1921, the other on January 8, 1922. Each set forth the facts above stated and each contained the allegation that plaintiff had enjoyed the confidence of the members of said parish and of the residents of the city and county of Racine and had established a favorable reputation for honesty, integrity, and efficiency among the members of such congregation and the people of said city and county. The following were parts of such complaint:

### First cause of action.

"That on or about the 31st day of July, A. D. 1921, the defendant, in the presence and hearing of divers persons and members of the congregation, intending to injure the plaintiff by imputing to him a want of official integrity, and to cause him in his official capacity as trustee of St. Rose Church congregation to be looked upon with distrust and

to expose him to public ridicule, contempt, and hatred among the members of the congregation, and to injure him in his good name, fame, and credit in the community, maliciously used the false, scandalous, and defamatory words following. to wit: 'They (meaning the trustees and including the plaintiff) are liars, hypocrites, traitors, and Judases.'

"And the following false, scandalous, and defamatory statement: 'There are no books or records of any description in existence showing where the moneys of the congregation have gone. There is no way of finding out what anything cost. I cannot find what the carpet on the altar cost. Where did the money go?' Thereby intending to have it understood by the members of the congregation, and as it was in fact so understood by them, that the plaintiff, as trustee and officer of the corporation, had failed to honestly perform the duties of his office and discharge his obligations to the congregation, and had misappropriated, for his own use, funds of the congregation."

Damages were claimed in the sum of $10,000.

### Second cause of action.

"That as trustee and officer of said corporation the plaintiff assisted in preparing the annual financial statement of St. Rose Church congregation for the year ending December 31, 1920, and signed such statement as treasurer of the corporation. That under the title 'Receipts' the following entry appeared: 'Collection for St. Benedict's Colored Mission, six hundred eighty-one dollars,' and under the title 'Disbursements' the following entry appeared: 'Collection for St. Benedict's Colored Mission, six hundred eighty-one dollars.'

"That on or about the 8th day of January, A. D. 1922, the defendant, in the presence and hearing of divers persons and members of the congregation, intending to injure the plaintiff by imputing to him a want of official integrity, and to cause him in his official capacity as trustee of St. Rose Church congregation to be looked upon with distrust and to expose him to public ridicule, contempt, and hatred among the members of the congregation, and to injure him in his good name, fame, and credit in the community, maliciously

used the false, scandalous, and defamatory words following, to wit: 'Six hundred eighty-one ($681) dollars was collected in 1920 for St. Benedict's Colored Mission. Father Stephan (meaning St. Benedict's Colored Mission) received five hundred eighteen ($518) dollars. Where is the difference? What became of the balance?' Thereby intending to have it understood by those who heard him, and as it was in fact so understood by them, that the plaintiff had failed to honestly perform the duties of his office and had misappropriated, for his own use, funds belonging to the St. Rose Church congregation."

Damages were claimed in the sum of $15,000.

Separate demurrers were interposed in the municipal court to each of said causes of action upon the ground that it appeared upon the face of each thereof that it did not state facts sufficient to constitute a cause of action. Upon said demurrers being overruled the defendant answered. At the opening of the trial in the circuit court a demurrer *ore tenus* was interposed and exception taken to its being overruled.

A special verdict was submitted to and answered by the jury, the substance of which was as follows:

### First cause of action.

(1) The defendant did in the presence and hearing of the congregation on July 31, 1921, utter the words, or such in substance: "They are liars, hypocrites, and Judases."

(2) At the same time he did say: "There are no books or records of any description in existence showing where the moneys of the congregation have gone. There is no way of finding what the carpet on the altar cost. Where did the money go?"

(3) The defendant spoke the above words concerning the plaintiff.

(4) A person of average comprehension would understand the words to charge the plaintiff with want of official integrity as trustee and officer of St. Rose congregation and

that he had failed to honestly perform the duties of his office and to discharge his obligations to the congregation.

(5) That, construed in the plain and popular sense, the words would naturally be understood to contain an accusation tending to subject the plaintiff to disgrace, distrust, hatred, ridicule, or contempt.

(6) (a) The defendant was then actuated by feelings of ill will, hatred, and vindictiveness; (b) he uttered them with reckless disregard of their truth or falsity and of the consequences.

(7) Defendant did not make such statements in the good-faith performance of his pastoral duties.

(8) As compensatory damages on this cause of action they fixed the sum of $5,000.

(9) They awarded as punitory damages $2,000.

## Second cause of action.

(10) The defendant on January 8, 1922, in the presence of the members of the congregation, uttered the following words or such in substance: "Six hundred eighty-one dollars was collected in 1920 for St. Benedict's Colored Mission. Father Stephan received five hundred eighteen dollars. Where is the difference? What became of the balance?"

The eleventh to fifteenth questions corresponded in form and were answered the same way as the third to seventh respectively in the first cause, *supra*.

(16) His compensatory damages assessed at $7,000.

(17) His punitory damages assessed at $2,000.

Upon motions made by the respective parties the court directed as follows:

That if plaintiff filed consent in writing thereto he should have judgment for $2,200, together with costs and disbursements. Said sum of $2,200 arrived at as follows: the compensatory damages of $5,000 and $7,000 to be reduced to $500 and $700, respectively; the punitory damages of $2,000 to be reduced to the sum of $500 in each cause. On plaint-

iff's refusal to so elect, defendant to have the same election. Otherwise defendant to have a new trial on account of excessive damages.

The plaintiff having so elected, judgment was directed in his favor for said sum of $2,200, with costs and disbursements, from which judgment defendant has appealed.

*Thomas P. Hardy,* attorney, and *Leonard P. Baumblatt,* of counsel, both of Racine, for the appellant.

For the respondent there was a brief by *Whaley & Erikson* of Racine, attorneys, and *Frank T. Boesel* of Milwaukee, of counsel, and oral argument by *Mr. Vilas H. Whaley* and *Mr. Boesel.*

The following opinion was filed April 3, 1923:

ESCHWEILER, J.   The defendant argues that the demurrers interposed to the two causes of action should have been sustained, it having been conceded by plaintiff, as appears from the record before us, and the contrary is not here urged, that the words relied upon in each of the separate causes of action did not import the charge of a commission of a crime by the plaintiff.

Construing the entire language of the first cause of action, though embraced in two distinct statements, yet all part of one address, made by defendant to his congregation on July 31, 1921, concerning plaintiff, we are of the opinion that so construed together they support a conclusion that their plain and reasonable import charged a lack of fidelity, honesty, and integrity by plaintiff in the discharge of his duties as trustee and officer of the congregation, and because so tending to disgrace and disparage him as such officer they were slanderous *per se.*

It is urged that, to be recognized as sufficient foundation to support an action for slander, words tending to disparage or discredit one in an official capacity must relate to one as a public officer only.   We can see no reason for such suggested distinction, and the rule seems to be well established that

language tending to discredit or disparage any one holding an office, in the broader sense of the term, whether in a private corporation or any form of voluntary association, is considered, for present purposes, as though spoken of one who is a public officer. *Doherty v. Lynett,* 155 Fed. 681; 25 Cyc. 352; Newell, Slander & L. (3d ed.) pp. 212, 233.

We are therefore satisfied that the demurrer to the first cause of action was properly overruled.

On the second cause of action, however, construed as it now must be, upon the challenge to it by the demurrer, entirely independent of what is charged in the first cause of action and independent of the testimony on the trial, we are forced to the conclusion that it is controlled by the ruling of this court in the case involving substantially similar language of *Laurent v. Van Somple,* 161 Wis. 354, 154 N. W. 366, where the words spoken by the defendant, a priest, to his congregation of the plaintiff, a blacksmith, secretary of and one of the board of trustees, were: "What was done between January and March, 1913, I am not responsible for. There was sixty-odd dollars collected that I cannot account for. I have nothing to show. This is for accounts of January and February, 1913. The books show that this was collected, but there is no account to show what became of it." The words here before us are: "Six hundred eighty-one dollars was collected in 1920 for St. Benedict's Colored Mission. Father Stephan received five hundred eighteen dollars. Where is the difference? What became of the balance?" Construed, as they must be, by the language alone (*Lubcke v. Teckam,* 179 Wis. 543, 191 N. W. 968), these words carry on their face merely a charge of imperfect or slovenly bookkeeping, as in the above case, and are not actionable *per se.* See, also, *Schnobrich 'v. Venske,* 146 Minn. 21, 177 N. W. 778.

The demurrer to the second cause of action should therefore have been sustained.

Defendant by his answer pleaded a conditional privilege

as to any statements he may have made and has urged that plea here. The jury, however, found express malice, and such a finding, if sustained, takes the question of conditional privilege out of the case. The findings in this regard are challenged by defendant. No useful purpose would be served by going into the details of the evidence. The verdict has support and must stand.

Other errors are assigned relating to the charge to the jury and on questions of admission of evidence. Another assignment is based upon refusal to grant a new trial on account of a showing made by affidavits subsequent to verdict relating to the subject matter of the examination of one of the jurors on the *voir dire*. An examination of all these assignments satisfies us that they are not well taken.

The trial court held that the damages as assessed by the jury and aggregating for the two causes of action $16,000 were highly excessive. With that view we agree. He also held that, though excessive, it could not properly be considered as indicating such perversity as required the setting aside of the entire verdict, and with this conclusion we also agree.

In his written opinion disposing of the motions after verdict and referring to the option he gave first to plaintiff and then to defendant to have judgment entered for the $2,200 damages in place of the $16,000 as found by the jury, the court stated, referring to the reductions in both compensatory and punitory damages in the two causes of action, as follows: "These several amounts and total are considered as low and as high as an impartial jury, in the exercise of a sound discretion, acting reasonably upon the evidence, would be warranted in assessing upon another trial."

The method thus indicated by the trial court of fixing the optional sum as high and as low as would be fixed by a jury on another trial is not the method indicated as the proper one in *Gerlach v. Gruett*, 175 Wis. 354, 360, 185 N. W. 195. But under the authority of sec. 2405m, Stats.

(ch. 214, Laws 1913), we shall direct the entry of that which we deem to be the proper judgment in this case, and for that purpose consider that the sum of $500 compensatory and $500 punitory damages as fixed by the trial court for the first cause of action shall be deemed to be the lowest sum that would probably be fixed by a jury on a retrial of this case, and for that amount the plaintiff should have judgment.

*By the Court.*—Judgment modified by striking therefrom the $1,200 allowed as damages for the second cause of action, and then affirmed in the sum of $1,000 damages, defendant to have costs in this court.

A motion for a rehearing was denied, with $25 costs, on June 5, 1923.