POLZIN, Respondent, v. HELMBRECHT, Appellant.

No. 22. *Argued March 27, 1972.—Decided May 4, 1972.*
(Also reported in 196 N. W. 2d 685.)

For the appellant there was a brief and oral argument by *Jan Helmbrecht* of Mayville, pro se.

For the respondent there was a brief by *Allan & Storck* of Mayville, and oral argument by *Robert Storck*.

WILKIE, J. Several questions are raised in this appeal:

1. Was the language in the letter nonlibelous as a matter of law?

2. Did the court err in failing to instruct the jury about appellant's privilege to write such a letter?

3. Is appellant entitled to the protection of the *New York Times* standards?

4. If appellant is entitled to such protection, is the jury verdict constitutionally adequate?

*Is the communication nonlibelous?*

Appellant's initial contention is that the language in the letter is not libelous as a matter of law. The trial court has the obligation, in the first instance, of deciding whether the communication is capable of a defama-

tory meaning.[2] In *Lathan v. Journal Co.*[3] this court gave several definitions for "defamation":

"Defamation has been defined as:
" '. . . that which tends to injure "reputation" in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him.' Prosser [*Law of Torts* (hornbook series, 3d ed.),] page 756.
"In *Scofield v. Milwaukee Free Press Co.* (1905), 126 Wis. 81, 85, 105 N. W. 227, we held that for a newspaper article to be libelous it '. . . need only tend to degrade or disgrace the plaintiff generally, or to subject him to public distrust, ridicule, or contempt in the community . . . .'
"The Restatement [3 *Torts*], page 140, sec. 559, provides that:
" 'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' "

Appellant's primary argument is the word "reach" in the phrase "reached by the Purity dollar" does not and cannot have a defamatory meaning. We disagree. The word "reach" clearly can have the meaning "to succeed in getting or obtaining." [4] Given such a meaning, the phrase "reached by the Purity dollar" might well mean that plaintiff had been obtained by money from the cheese company. An implication can certainly be drawn that this letter meant that respondent had been paid off by Purity to write favorable articles. Given the context of the letter and the controversy surrounding it, such an interpretation of the letter would not be unlikely. In

---

[2] *Wozniak v. Local 1111 of UE* (1970), 45 Wis. 2d 588, 591, 173 N. W. 2d 596.

[3] (1966), 30 Wis. 2d 146, 152, 153, 140 N. W. 2d 417.

[4] Webster's, *Third International Dictionary*, p. 1888, definition of the word "reach" 2 (c) (4).

any event, the jury could, and obviously did, determine that the words "reached by the Purity dollar" had a defamatory meaning. Such a conclusion was properly within the province of the jury.[5]

We have no doubt that the assertion that a newspaper reporter had been bribed by the cheese company to obtain favorable coverage would constitute defamation under the definitions given above. Appellant's reliance on *Frinzi v. Hanson*[6] is inappropriate inasmuch as the court in that case simply analyzed the particular words allegedly published and determined them to be nonactionable as a matter of law. Obviously each statement must be taken in light of its own facts and surrounding circumstances. Here the statement by Mrs. Helmbrecht was arguably defamatory. The letter said that appellant had *"heard"* that respondent was reached by the "Purity dollar." Appellant did not make the outright statement that respondent had been reached. This might well go to whether the statement was written with "reckless disregard of the truth," but it does not go to the issue of whether or not it is defamatory.

### Conditional privilege.

Appellant claims that she had a conditional privilege to report to respondent's employer her alleged misconduct. Appellant also argues that her statement was privileged because it concerned a matter of public concern. Although it appears that a request for a jury instruction on conditional privilege was never submitted, even assuming the request was properly made, it is clear that a finding of malice by the jury obviates any conditional privilege. The finding of malice by the jury "takes

---

[5] *Martin v. Outboard Marine Corp.* (1962), 15 Wis. 2d 452, 462, 113 N. W. 2d 135.

[6] (1966), 30 Wis. 2d 271, 140 N. W. 2d 259.

the question of conditional privilege out of the case." [7] Inasmuch as malice, either actual or implied, is an essential element of actionable libel in Wisconsin,[8] the instruction on a conditional privilege would never be appropriate because if there is no malice there is no cause of action, and if there is malice the privilege does not apply. Thus the question to be determined when there is a conditional privilege is really malice, and that determination was made by the jury.

### Do the New York Times standards apply?

In *New York Times Co. v. Sullivan* [9] the Supreme Court of the United States held, in an action brought by a public official against a newspaper for libel, that the first amendment to the United States Constitution required clear and convincing proof that the defamation was published with "knowledge that it was false or with reckless disregard of whether it was false or not." In the present case appellant did not request that the jury be instructed under the *New York Times* standards and thus the issue is reviewable in the discretion of the court and not as a matter of right.[10] Because the jury instructions would go to appellant's constitutional right of free speech, we believe this is an appropriate case to review the issue as a matter of discretion.

The *New York Times* case involved the alleged libel of a public figure. We do not reach the question here of

---

[7] *Fitzgerald v. Piette* (1923), 180 Wis. 625, 632, 193 N. W. 86; *in accord, D'Amato v. Freeman Printing Co.* (1968), 38 Wis. 2d 589, 598, 157 N. W. 2d 686; Prosser, *Law of Torts* (hornbook series, 4th ed.), p. 794, sec. 115.

[8] *Flynn v. Western Union Telegraph Co.* (1929), 199 Wis. 124, 127, 225 N. W. 742.

[9] (1964), 376 U. S. 254, 280, 84 Sup. Ct. 710, 11 L. Ed. 2d 686.

[10] *Hoeft v. Milwaukee & Suburban Transport Corp.* (1969), 42 Wis. 2d 699, 707, 168 N. W. 2d 134; *Rowden v. American Family Ins. Co.* (1970), 48 Wis. 2d 25, 27, 28, 179 N. W. 2d 900.

whether the respondent was a public figure as there determined, in view of the more recent decision of the United States Supreme Court in *Rosenbloom v. Metromedia*.[11] In *Rosenbloom* a plurality [12] of the court extended the "public figure" test and indicated that the *New York Times* rule applied when the controversy related to an "event of public or general concern." [13] In the present case it is the reporter that is the plaintiff rather than the defendant.

We think critics of the media, like appellant here, are entitled to the same protections as were provided for the media in the *New York Times* and *Rosenbloom* cases. The defendant's letter discusses a matter of public concern—the financing of pollution control measures at Mayville; the letter was either intended for publication in the newspaper or to correct a story in that paper. Clearly Mrs. Helmbrecht has the same constitutional right to express her opinions as the reporter.

Thus, we conclude that the appellant is entitled to have the protection of the higher level of proof requiring plaintiff to convince the jury by clear and convincing evidence. She is also entitled to a jury determination of whether what was stated was published with "knowledge that it was false or with reckless disregard of whether it was false or not." The appellant is entitled to the protection of the standards required in the *New York Times* case.[14]

---

[11] (1971), 403 U. S. 29, 91 Sup. Ct. 1811, 29 L. Ed. 2d 296.

[12] The plurality opinion was written by Justice BRENNAN and was joined by Chief Justice BURGER and Justice BLACKMUN. Concurring were Justices WHITE and BLACK. Justices HARLAN, STEWART and MARSHALL dissented; Justice DOUGLAS took no part.

[13] *Rosenbloom v. Metromedia, supra,* footnote 11, at page 52.

[14] In *Dalton v. Meister* (1971), 52 Wis. 2d 173, 183, 188 N. W. 2d 494, certiorari denied (1972), 405 U. S. 934, 92 Sup. Ct. 947, 30 L. Ed. 2d 810, this court pointed out that the *Times-Sullivan* rule "is not confined to news media and free press but also applies to

*Were the New York Times standards complied with?*

In *Dalton v. Meister*,[15] decided shortly after *Rosenbloom*, this court discussed the *New York Times* rule:

> "The *Times-Sullivan* rule recognized the constitutional guaranties of freedom of speech and of press place limitations upon state libel laws. Two important limitations in cases involving public interest seem to be: (1) The standard of proof is not the greater weight of the evidence but the 'clear and convincing proof,'—this to give the freedoms 'adequate breathing space;' and (2) negligence is out as a basis of liability and a willfulness based on knowledge is a substitute, *i.e.*, the defamatory falsehood must be published with knowledge that it is false or with reckless disregard of whether it was false or not."

Thus, there are two considerations: burden of proof and reckless disregard for the truth.

A. *Burden of proof.* The burden of proof in this case was the greater weight of the evidence. Clearly, the standard of *New York Times* was not met in this respect.

B. *Reckless disregard for the truth.* Inasmuch as there was no finding of reckless disregard for the truth made in this case by the jury, the question thus becomes whether the finding of malice within the meaning of Wis J I—Civil, Part II, 2518 [16] is adequate to meet the *New York Times* test. At the outset it is important to note that there are two types of malice: "Express malice"

private individuals and free speech in some cases." citing *St. Amant v. Thompson* (1968), 390 U. S. 727, 88 Sup. Ct. 1323, 20 L. Ed. 2d 262, and *Linn v. Plant Guard Workers* (1966), 383 U. S. 53, 86 Sup. Ct. 657, 15 L. Ed. 2d 582.

[15] *Supra*, footnote 14, at page 183.

[16] "Express malice exists when . . . *(libelous words are published)*, concerning a person, from motives of ill will, envy, spite, revenge, or any other bad or corrupt motives against the person . . . *(libeled)."*

is that malice described in the jury instruction used in this case, that is "ill will, envy, spite, revenge," etc.; the supreme court in *Rosenbloom* also referred to this type of malice as "common law malice." "Actual malice" (referred to in the *New York Times* case) is not malice at all, rather it is knowledge that a statement was false or published with reckless disregard of whether it was false or not. "Actual malice" is what is required for a constitutional determination of libel under *New York Times*.

"Express" and "actual" malice are very different concepts. One may utter a statement with ill will, that is, with "express malice," although the statement is true. Thus there would be no "actual malice." Conversely, as pointed out in *Rosenbloom*,[17] a verdict may be valid under *New York Times* despite the fact that the defendant had no motives of ill will, envy, spite, or revenge. In such a case it is enough that the statement was false or was made with disregard for whether it was true or not. Thus, there are two types of malice which are completely independent of one another. Here, then, where there was a finding only of "express malice," the verdict does not constitutionally support a finding of "actual malice" and for that reason the verdict does not meet *New York Times* in that regard. A new trial is required with proper verdict questions and related instructions.

It should finally be noted that in a case such as this where the *New York Times* standards apply and where punitive damages are sought there must be a finding of both express and actual malice to support an award of punitive damages: "Express malice" to meet the criteria for awarding punitive damages and "actual malice" to meet the constitutional requirements for liability at all.

---

[17] *Rosenbloom v. Metromedia, supra,* footnote 11, at page 37, note 9, and page 52, note 18. *See also: Garrison v. Louisiana* (1964), 379 U. S. 64, 71, 72, 85 Sup. Ct. 209, 13 L. Ed. 2d 125.

### Excessive damages.

Appellant contends that the verdict of $4,000 compensatory and $1,000 punitive damages is excessive. Since this case is to be remanded, all issues, including the determination of damages, are to be retried.

*By the Court.*—Judgment reversed and cause remanded for further proceedings in accord with this opinion.

ROBERT W. HANSEN, J. *(concurring).* As to the level of proof required, the writer completely concurs with the majority's holding that the plaintiff—to recover damages for a defamatory falsehood relating to the reporting of news as to public events or concerns—must prove that the alleged defamatory statement was made with "actual" malice—that is, made with knowledge that it was false or with reckless disregard of whether it was false or not.

However, as to damages recoverable if such higher threshold of proof is crossed, the writer would hold that damages in this situation should be limited only to "actual" damages—that is, damages that reflect any loss or injuries in fact sustained by the public figure—plaintiff. Neither presumed nor punitive damages should be permitted or awardable. The same cases, cited by the majority, that require the higher level of proof in this situation, suggest at least the lower limit on damages that are to be awarded. The constitutional protection to freedom of speech and the sound public policy of seeking to promote and protect full debate and free discussion of public issues and policies would be better served by both the higher threshold as to proof and a lowered ceiling as to damages. (*See:* Dissenting opinion in *Dalton v. Meister* (1971), 52 Wis. 2d 173, 184, 188 N. W. 2d 494.)

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this concurring opinion.