Allan D. "Rick" ZINDA,† Plaintiff-Respondent and Cross-Appellant.

v.

LOUISIANA-PACIFIC CORPORATION and Hartford Accident and Indemnity Co., a foreign insurance company, Defendants-Appellants and Cross-Respondents.

Court of Appeals

*No. 86–0737. Orally argued February 11, 1987.—Decided May 26, 1987.*

(Also reported in 409 N.W.2d 436.)

† Petition to review granted.

278

For plaintiff-respondent and cross-appellant, there were briefs by *David Weiby* and *Maria Cuzzo,* of Superior. There was oral argument by *Maria Cuzzo.*

For defendants-appellants and cross-respondents, there were briefs and oral argument by *James R. Scott,* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Louisiana-Pacific Corporation (L-P) and its insurer, Hartford Accident and Indemnity Company, appeal a $100,000 judgment on a jury verdict finding that L-P made a defamatory statement about its former employee, Allan D. "Rick" Zinda, and that it invaded Zinda's privacy. The issues on appeal are whether L-P abused its claimed conditional privilege to make the defamatory statement, whether there was credible evidence to support the finding that L-P's statement was substantially untrue and to find that L-P invaded Zinda's privacy, and whether the damage award was excessive. Zinda cross-appeals a summary judgment dismissing his claims for punitive damages and damages for wrongful discharge. We affirm the judgment on the verdict as to liability and the summary judgment, and reverse and remand for a new trial on damages.

The following facts are essentially undisputed. Several years before he began working at L-P's Hayward plant, Zinda had been injured in a fall through his garage roof. Zinda applied for work with L-P in 1983 and completed a standard application form as well as a medical history form. An L-P personnel officer interviewed him and recorded Zinda's answers. After Zinda was hired, he filed a product liability suit[1] against L-P for negligently manufacturing the waferboard through which he had fallen. L-P's director of personnel, Donald Plante, upon receiving the summons and complaint, compared its allegations as to Zinda's injuries with the answers on the medical history form and found what he considered to be

---

[1]Zinda later dismissed his products liability suit for reasons unrelated to this appeal.

irreconcilable inconsistencies. Plante immediately suspended and later terminated Zinda's employment.

Plante published a notice concerning Zinda's termination in The Waferwood Press, an L-P plant newspaper, under the column heading "Comings and Goings." The notice read: "5/29/84 Terminate Al Zinda Falsification of Emp. forms." The newspaper was distributed to the employees by placement in the plant lunchroom. Employees routinely took the newspaper out of the work place. A copy of the newspaper reached the Hayward Community Hospital, where Mrs. Zinda worked, and several of her co-workers read the reference to Zinda's termination. Zinda sued L-P for libel, invasion of privacy, and wrongful discharge.

## LOSS OF CONDITIONAL PRIVILEGE

L-P first claims that the trial court erred by deciding as a matter of law that its communications through The Waferwood Press were not conditionally privileged. We need not address this issue because we conclude that L-P, as a matter of law, abused any privilege it may have had when it engaged in excessive publication.

Conditional privilege may be asserted as a defense to a defamation action. *Ranous v. Hughes,* 30 Wis. 2d 452, 467–68, 141 N.W.2d 251, 258 (1966). An otherwise defamatory communication is conditionally privileged if it is made in good faith by a person who has a sufficiently important interest in a particular subject and to a person with a corresponding interest in the subject. *Converters Equip. Corp. v. Condes Corp.,* 80 Wis. 2d 257, 264, 258 N.W.2d 712, 715 (1977). The defense of conditional privilege may be lost if the

privilege is abused. *Ranous,* 30 Wis. 2d at 468, 141 N.W.2d at 258–59.

The conditional privileges section of Restatement (Second) of Torts (1977), has been endorsed by the Wisconsin Supreme Court. *Convertors Equip. Corp.,* 80 Wis. 2d at 264, 258 N.W.2d at 716. A privilege to communicate is abused, and its protection lost, if "the publication was made to some person not reasonably believed to be necessary for the accomplishment of the particular privilege ...." *Ranous,* 30 Wis. 2d at 468, 141 N.W.2d at 259 (citing Restatement of Torts sec. 603 at 269–70 (1938)). Where, as here, the material facts are not in dispute, the question of abuse of privilege is one of law that we may decide without deference to the trial court. *See Ranous,* 30 Wis. 2d at 469, 141 N.W.2d at 259.

Restatement (Second) of Torts sec. 604 (1977) provides:

**Excessive Publication**

**One who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged.**

**Comment:**
   *a.* Ordinarily, a privilege is abused by speaking defamatory words in the presence of persons whose knowledge of them is unnecessary to the protection of the interest in question. However,

this is not true when the publication to those persons is reasonably incidental to the communication of the defamatory matter to the person whose knowledge is reasonably believed to be necessary or useful for the protection of the interest. In many cases, the communication, to be effective, must be made at a given time and place even though third persons are present who are likely to overhear it. In other cases, the difficulty of strictly private communication may be so great as to make it proper to speak when a third person is present. On the other hand, if the speaker unnecessarily publishes a slander to third persons to whom he is not privileged to publish it, the fact that by so doing he communicates the defamatory matter to a person to whom he is privileged to publish it does not prevent his conduct from being an abuse of the privilege.

■

L-P abused any privilege it may have had. Both Plante and his supervisor were fully aware that the newspapers were routinely removed from the premises. Further, the content of The Waferwood Press encouraged its removal. For example, a full page of the disputed edition was devoted to specifications and drawings for building a storage shed. In order to use the plan, an employee would almost certainly carry the newspaper out of the plant. Other columns reported social events of interest to family members and friends beyond those employed at L-P. The newspaper contained no suggestion that the defamatory material was to be treated as confidential. Given these undisputed facts, L-P knowingly published to excess.

Assuming without deciding that the company's asserted goals gave rise to a conditional privilege,[2] those goals could easily have been met by other means. Printing the defamation in a newspaper with no attempt to restrict publication was an abuse of the claimed privilege.

## SUBSTANTIAL TRUTH

■

L-P also contends that no credible evidence supports the jury's "NO" answer to the verdict question, "Was the statement '5/29/84 Terminate Al Zinda Falsification of Emp. forms' substantially true"? The substantial truth of any statement is an absolute defense to a defamation action. *Schaefer v. State Bar,* 77 Wis. 2d 120, 125, 252 N.W.2d 343, 346 (1977). The burden of proving the substantial truth of a statement is placed on the publisher. *Denny v. Mertz,* 106 Wis. 2d 636, 661 n. 35, 318 N.W.2d 141, 153 n. 35 (1982).

Zinda testified that while he had previously sustained some injuries of the nature listed on the medical history form, he was in good health when he filled out the form. He also testified that he truthfully completed the form. The jury could reasonably have found Zinda's testimony credible.

---

[2]L-P asserts two subjects in which it claims that both L-P and the employees had a sufficiently important interest to create a conditional privilege. First, it suggests that communicating the circumstances of Zinda's discharge would improve employee morale because it would counteract rumors of cutbacks or layoffs in employment. Second, L-P contends that it would promote employee integrity by demonstrating the consequences of dishonest behavior. Whether the facts or the law would support L-P's contention is not decided in view of our ruling on the abuse of the asserted privilege.

The medical inquiry form is extremely vague. The form lists a series of health concerns, some phrased in the present tense, some in the past, and still others totally unspecified. For example, the form asks "Do You Have A Cold Now," "Are You In Good Health," "Do You Wear Glasses," and "Use Tranquilizers." Other questions inquire of "Previous Surgery," "Previous Hospitalization," or ask the applicant "Ever Feel Depressed." Numerous others, however, are obscurely presented: "Back Injury Or Disability," and "Fracture Or Broken Bone." The applicant is left to speculate whether the inquiry is into past or present problems.

■

When questions call for an applicant's judgment or opinion, any ambiguity should be construed against the company that prepared the form. *See Nolden v. Mutual Bene. Life Ins. Co.,* 80 Wis. 2d 353, 366, 259 N.W.2d 75, 81 (1977). In fact, Zinda marked "Yes" after "Previous Surgery" and "Previous Hospitalization" and, in a space to explain all "Yes" answers, he wrote, in part: "fall off [r]oof." Further, Zinda, when interviewed, was asked: "What accidents have you had *on* or *off* the job"? He answered: "*Fell off roof*—broke some bones—ribs, heel—no problem now."

■

The jury was charged with weighing the credibility of the witnesses. *Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 84 n. 5, 253 N.W.2d 526, 532 n. 5 (1977). Given Zinda's testimony, the ambiguous nature of the medical history form, and his interview answers, the jury's conclusion that Zinda did not falsify his employment forms was supported by credible evidence.

## INVASION OF PRIVACY

L-P next claims that there was no credible evidence from which the jury could determine that L-P unreasonably invaded Zinda's privacy. Zinda's invasion of privacy claim is based on sec. 895.50(2)(c), Stats.[3] Section 895.50(2)(c) defines invasion of privacy as:

> Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public good.

L-P does not seriously dispute that the statement in The Waferwood Press was "publicity"[4] of a matter

---

[3] The language of sec. 895.50(2)(c) comes almost directly from Restatement (Second) of Torts, sec. 652D (1977), which reads as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>      (a)   would be highly offensive to a reasonable person, and
>      (b)   is not of legitimate concern to the public.

[4] Restatement (Second) of Torts sec. 652D comment a (1977) describes "publicity":

> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or

"concerning the private life" of Zinda. L-P does argue, however, that no credible evidence supported the "highly offensive" and "legitimate public interest" elements of the invasion of privacy claim.

The first of these elements requires that the publicity must be of a kind "highly offensive to a reasonable person." A reasonable person could only interpret the statement "Falsification of Emp. forms" to mean that Zinda had lied. It was unnecessary to use more explicit language to convey that meaning. Certainly the jurors were capable of assessing the evidence in light of their own experiences to determine that the statement was "highly offensive" to a reasonable person.[5]

statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

[5]Restatement (Second) of Torts sec. 652D comment c (1977) discusses the meaning of "highly offensive":

The rule stated in this Section gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable man. The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens. Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. Thus he must expect the more or less casual observation of his neighbors as to what he does, and that his comings and goings and his ordinary daily activities, will be described in the press as a matter of casual interest to others. The ordinary reasonable man does not take offense at a report in a newspaper that he has returned from a visit, gone camping in the woods or given a party at his house for his friends. Even minor and moderate annoyance, as for example through public disclo-

██ L-P also contends that there was no credible evidence that L-P recklessly or unreasonably disregarded whether there was a legitimate public interest in the statement. Personnel Director Plante provided testimony that belies L-P's contention. He conceded during cross-examination that the published information was not of legitimate interest to the public at large. His position was that because he considered the statement to be the truth, he was not concerned about this issue. Since he had been given "[f]or the most part" a "free rein" in managing the paper, the jury was entitled to conclude that his acts were the unreasonable or reckless acts of his employer.

## DAMAGES

██ L-P also contends that the total award of $100,000, $50,000 for defamation and $50,000 for invasion of privacy, was excessive and unsupported by the evidence. We agree. This court must sustain a jury's award of damages if there is any credible

---

sure of the fact that the plaintiff has clumsily fallen downstairs and broken his ankle, is not sufficient to give him a cause of action under the rule stated in this Section. It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.

See also Beresky v. Teschner, 381 N.E.2d 979, 984 (Ill. 1978) (series of articles concerning son's death by apparent overdose of drugs found highly offensive); Rafferty v. Hartford Courant Co., 416 A.2d 1215, 1216 (Conn. Super. Ct. 1980) (jury could find newspaper story and photograph of "unwedding" party to celebrate freedom from their marriage highly offensive).

evidence to support it. *Springen v. Ager Plumbing & Heating, Inc.,* 19 Wis. 2d 487, 489, 120 N.W.2d 692, 693 (1963). On appeal, this court is obliged to consider the evidence from a viewpoint most favorable to Zinda, the prevailing party in the jury's decision. *See Coryell v. Conn,* 88 Wis. 2d 310, 317, 276 N.W.2d 723, 727 (1979).

A reviewing court may review the evidentiary record as a matter of first impression if the trial court does not analyze the evidence upon which it approved the jury's damage award. *Koele v. Radue,* 81 Wis. 2d 583, 587, 260 N.W.2d 766, 767–68 (1978). Although the court approved the award, it did not attempt to analyze it.[6]

> Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict ... will not be set aside merely because it is large or because the reviewing court would have awarded less. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or,

---

[6]The trial court stated in part:

Fifty thousand dollars for each? Well, that's what counsel asked for. And we probably would all concede it isn't very often when juries give just exactly what people ask for. But obviously this jury thought that what had been done was worth that amount as far as what the plaintiff had been through or plaintiffs had been through.

Now, there isn't any slide rule, there isn't any formula that establishes dollars for this type of damage. And I don't think this court's in the position to second guess those twelve jurors and pull a figure out of the air because I don't think that jury pulled a figure out of the air.

as it is sometimes said, see that the results
attained do not shock the judicial conscience ....

*Coryell,* 88 Wis. 2d at 315–16, 276 N.W.2d at 726
(quoting *Bethke v. Duwe,* 256 Wis. 378, 384–85, 41
N.W.2d 277, 280 (1950)). We conclude, based upon the
meager evidence presented here, that the verdict is
excessive. Extraordinarily large damage awards can-
not be supported by conclusory claims for damages.
*See Dupler v. Seubert,* 69 Wis. 2d 373, 384–87, 230
N.W.2d 626, 632–34 (1975).

In this case the only evidence of Zinda's damages
was the brief and conclusory testimony of Zinda and
his wife. Zinda testified that he was embarrassed and
humiliated, that he wondered if his friends thought of
him as a liar, and that there were unspecified conflicts
and added tensions in his marriage. Mrs. Zinda
testified that her husband was humiliated and acted
"[l]ike he was shot down."

Neither witness offered any detail or further
description regarding the duration or depth of Zinda's
mental anguish that would serve as grounds for actual
damages. Zinda received no medical treatment nor
counseling and had no out-of-pocket losses. He offered
no proof of lost income attributable to the defamation.

Significantly, he presented no evidence that his
reputation suffered. In fact, the sole inquiry into
Zinda's reputation, during the entire course of trial,
was a question put to each of the two nurses who
worked with Mrs. Zinda. The first, who had never met
Zinda prior to trial, responded in the negative when
asked if she had any "ill feeling toward Allan Zinda"
as a result of reading the article. The second, who
knew Zinda prior to the newspaper story, answered no
when asked if the article changed her opinion of him.

While several factors explain the size of the jury's award, none of them justify it. These factors include Zinda's summary dismissal without cause and L-P's allegedly retaliatory motive in making its defamatory statement.

Zinda's dismissal was irrelevant as a basis for compensatory damages for defamation. His wrongful discharge claim was dismissed by summary judgment prior to trial and was therefore not a jury issue. Although Zinda testified that he was without a job, outside of self-employment, he made no attempt to show decreased income. Even if he had lost income, it would be his burden to show that the loss was attributable to the defamation, not to the wrongful discharge.

Likewise, Zinda's claim for punitive damages based on L-P's express malice was dismissed by the trial court prior to the verdict. Express malice exists when a defamatory statement is published for motives of ill will, bad intent, envy, spite, hatred, revenge, or other bad motives against the person defamed. *Polzin v. Helmbrecht,* 54 Wis. 2d 578, 587–88, 196 N.W.2d 685, 690 (1972). Express malice serves as a basis for punitive damages. *Calero v. Del Chem. Corp.,* 68 Wis. 2d 487, 506, 228 N.W.2d 737, 748 (1975).

Here, because the trial court dismissed Zinda's claim for punitive damages based on express malice, it was improper to inject L-P's motives into the compensatory damage claim. Unfortunately, this is exactly what happened. Despite objection, the jury was advised that in assessing damages it could consider L-P's refusal to retract its statement. The only purpose in considering L-P's refusal was to show its motive or

attitude toward Zinda. If the trial court erred by dismissing the express malice-punitive damage claim, the remedy was appeal, not pursuit of those damages disguised as compensatory losses. Accordingly, we conclude that the jury verdict was excessive and reverse and remand for a new trial on the issue of damages only.

*CROSS-APPEAL*

█ Finally, we decline to address the cross-appeal. Because Zinda neglected to raise the trial court's dismissal of his wrongful discharge and punitive damage claims in post-verdict motions, we deem them to have been waived. *See Upton v. Tatro,* 68 Wis. 2d 562, 574, 229 N.W.2d 691, 697 (1975). Accordingly, we affirm on these issues.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions. No costs on appeal.

MYSE, J. (*dissenting*). I dissent from that portion of the majority opinion finding that the damages awarded by the jury were excessive. Although the majority cites the correct standard of review, it misapplies that standard in reviewing the jury's award of damages.

A jury has broad discretion in determining the monetary amount to which a plaintiff is entitled because of a defendant's misconduct. *Makowski v. Ehlenbach,* 11 Wis. 2d 38, 42, 103 N.W.2d 907, 910 (1960). Here, the jury and the court had an opportunity to hear the evidence, view the witnesses, and evaluate the effect of L-P's conduct upon Zinda and

his wife. The credibility of the witnesses and the weight to be afforded their testimony is for the trier of fact to determine. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). A damage award is to be sustained if there is any credible evidence to support it, and all evidence must be construed in a light most favorable to the jury's determination. *Springen v. Ager Plumbing & Heating, Inc.,* 19 Wis. 2d 487, 489, 120 N.W.2d 692, 693. This is particularly true when a damage award has been made by a jury and approved by the trial court. *Id.*

Notwithstanding these standards of review, the majority does what the law forbids. The majority speculates as to what was in the jury's mind when it made the damage award and concludes that the reasons the majority believes underlie the jury's decision do not justify the jury's award. The reasons underlying a jury's decision are not matters subject to speculation. Rather, the duty of an appellate court is to search the record for credible evidence to sustain the jury's decision. *Id.* A reviewing court is not permitted to examine either the reasons the jury acted as it did or the propriety of those reasons.

A damage award made by a jury after a full and fair trial must be reviewed with deference. An award for an invasion of privacy will frequently not be based upon objective medical symptoms, but on the offensive nature of a defendant's conduct. Section 895.50(4), Stats., provides that compensatory damages arising from an invasion of privacy "are not limited to damages for pecuniary loss ...." A plaintiff may recover damages for the emotional distress and the personal humiliation caused by the invasion of privacy. *See* Restatement (Second) of Torts sec. 652H (1977). An award of $50,000 for the invasion of privacy is not

so shocking that it must be set aside as a matter of law.

The jury also awarded $50,000 for defamation. Once again the majority concludes as a matter of law that this is excessive. The value of a person's reputation is difficult to determine. As Iago said to Othello:

> Good name in man and woman, dear
>     my lord,
> Is the immediate jewel of their souls:
> Who steals my purse steals trash; 'tis
>     something, nothing;
> 'Twas mine, 'tis his, and has been slave
>     to thousands;
> But he that filches from me my good
>     name
> Robs me of that which not enriches
>     him,
> And makes me poor indeed.

Shakespeare, *Othello,* Act. III, sc. 3, line 155.

In reviewing a damage award granted by a jury, a court may not substitute its judgment for that of the jury. *Badger Bearings, Inc. v. Drives & Bearings, Inc.,* 111 Wis. 2d 659, 670, 331 N.W.2d 847, 854 (Ct. App. 1983). Apparently, the majority has determined that a person's good name and reputation for honesty is not worth $50,000. Although under the majority's value system a lesser amount may properly reflect the value of this very intangible asset, the majority is not privileged to superimpose its value system on the jury.

The mere fact that Zinda has not suffered grievous physical injury requiring thousands of dollars of special damages in no way diminishes the value attached to one's good name and reputation. In *Denny v. Mertz,* 106 Wis. 2d 636, 659, 318 N.W.2d 141, 152

(1982) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349–50 (1974)), the court noted:

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

*See also Dalton v. Meister,* 52 Wis. 2d 173, 179, 188 N.W.2d 494, 497 (1971); Restatement (Second) of Torts sec. 623 (1977).

I suggest that the majority has erroneously applied the standard of review and has superimposed their value system on the jury. This is not the function of an appellate court. I would sustain the jury's award of damages.