In re William J. EVERS and Anita E. Evers, Debtors.

Robert J. LANGAN, Plaintiff,

v.

William J. EVERS, Defendant.

Bankruptcy No. 95–25648–JES.
Adversary No. 95–2481.

United States Bankruptcy Court,
E.D. Wisconsin.

July 1, 1997.

Winston A. Ostrow, Godfrey & Kahn, S.C., Green Bay, WI, for Plaintiff.

William J. Evers, Defendant Pro Se.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

It's been said that time has a way of healing disputes. That maxim may often be true, but unfortunately it has no application here. This dispute has been waged between these parties for well over 11 years with no sign of its losing any of its steam. The amount in question is relatively small—only $5,000. The chances of the plaintiff collecting on this debt, even if declared nondischargeable, are minimal. Nonetheless, the fight goes on.

### BACKGROUND

This controversy arises out of a series of allegedly defamatory articles written about the plaintiff and published in a trade newspaper known as *The Entertainer* over a period from September, 1985 through June, 1986. The articles gave rise to the plaintiff bringing a libel suit against the defendant and a third party, Theodore Witheril, in Brown County, Wisconsin circuit court, both of whom he claimed were responsible for publishing the articles. It ultimately resulted in a $5,000

consent judgment granted to the plaintiff against the defendant in December, 1988.

The defendant subsequently filed a voluntary petition in bankruptcy under chapter 7 on September 8, 1995. When he filed his bankruptcy petition, he had not paid any portion of the consent judgment. This adversary proceeding was thereafter brought by the plaintiff, who seeks a determination that the $5,000 judgment be declared nondischargeable under 11 U.S.C. § 523(a)(6).[1]

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The state court consent judgment established liability and damages with respect to these issues. *Pizza Palace, Inc. v. Stiles (In re Stiles,* 118 B.R. 81 (Bankr.W.D.Tenn. 1990)); *Lucas v. Fayette (In re Lucas* ), 21 B.R. 794, 799 (Bankr.W.D.Mich.1982); *Richardson v. Combs (In re Combs),* 40 B.R. 148, 152 (Bankr.W.D.Va.1984). However, it did not determine whether the debt arose out of willful and malicious conduct on the part of the defendant. That is the remaining task for this court.

■ In order for the plaintiff to prevail under § 523(a)(6), he must establish that:

1. The defendant willfully caused the articles to be published and

2. The defendant acted maliciously in having the articles published.

■ The plaintiff has the burden of proving both of these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); *Goldberg Securities, Inc. v. Scarlata (Matter of Scarlata),* 979 F.2d 521, 525 (7th Cir.1992). Under § 523(a)(6), "willful" means deliberate or intentional, and "malicious" means in conscious disregard of one's duties or without just cause or excuse. Whether an actor behaved willfully or maliciously is ultimately a question of fact reserved for the trier of fact. *Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994).

*FACTS*

This case presents a remarkable study in contrast of two individuals who eventually wound up on a collision course with each other.

The plaintiff has devoted 32 1/2 years in law enforcement, rising up through the ranks from policeman to detective and then to chief of detectives in Green Bay, Wisconsin. He was later promoted to Green Bay assistant police chief and eventually became the Green Bay police chief, which position he held for approximately 4 1/2 years until his retirement on June 1, 1995.

The defendant, on the other hand, pursued a far different career. He ran a series of business enterprises, some of which can only be described as . of questionable repute. They included four massage parlors, which he operated through a corporation known as The Cheyenne Social Club. Two of the massage parlors were located in Green Bay, a third in Appleton, and a fourth in Oshkosh. He also owned and operated "Spanky's," a tavern in Green Bay. In addition, his business operations included *The Entertainer* trade publication whose circulation included the Milwaukee, Green Bay and Fox River Valley areas, an x-rated video store in Oshkosh known as "Adult Video", a computer business and a graphic arts service.

Since January of 1984, the defendant has continuously been incarcerated in various penal institutions resulting from federal and state criminal convictions which included extortion, racketeering, prostitution and interference with interstate commerce. He had a tenth grade education at the time he entered prison. While in prison, he furthered his education and has since obtained the equivalent of a high school degree and later received an associate degree in arts and sciences on a college level.

From the testimony presented and the exhibits received at the trial, while some facts have clearly emerged, other facts are murky.

---

1. 11 U.S.C. § 523(a)(6) states as follows:
 **§ 523. Exceptions to discharge.**
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

## ANALYSIS

 The court is convinced that the actions taken by the defendant with respect to the allegedly libelous newspaper articles were willful. "Willful" within the import of § 523(a)(6) means deliberate or intentional as contrasted with inadvertent or negligent. *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). It is clear from the record of this case that willfulness has been proven by the plaintiff. The more troubling issue here is whether the defendant's conduct was malicious.

 It is uncontroverted that the defendant harbors an intense dislike for the plaintiff and holds him responsible for his incarceration as well as for the eventual loss of all of his various business enterprises. *See* Tr. 19 (testimony of Theodore Witheril who quoted defendant as saying, in reference to the plaintiff, that "I hate that son of a bitch.") *See also* Tr. 308 (quoting defendant, "I don't like Mr. Langan. I didn't like him when I wrote the articles. I didn't like him before I wrote the articles, and I don't like him today.") It is not necessary to prove maliciousness by spite or ill will, but the presence of these elements alone does not establish maliciousness. The defendant intended, by publishing these articles, to, using the defendant's word, "defuse" the plaintiff from pursuing his investigation of the defendant on potential criminal charges arising from the operation of his massage parlors.

In general, the articles presented an attack upon the competency of the Green Bay Police Department and more particularly, upon the competency of the plaintiff. These articles focused upon three separate criminal matters:

1. The Thomas J. Schroeder murder case. Schroeder was a 15–year old boy who was killed. The articles asserted that he was being used by the police, under the plaintiff's supervision, for undercover work and constituted "shady police tactics."

2. The Margaret Anderson murder case. According to the articles, this case was mishandled by the Green Bay Police Department and involved a police "cover-up." The defendant testified that he had been instrumental in obtaining an arrest in connection with this case and that although a $15,000 reward had been offered, he never received any part of it.

3. Prostitution activities. The articles criticized the police tactics used in connection with its ongoing investigation into prostitution in and about Green Bay. The police department was accused of improper tactics by using private citizens, sometimes through intimidation, as part of a sting operation.

Perhaps the most offensive publications were those contained in Exhibits 9 and 14. Exhibit 9 was a cartoon which identified one person as the plaintiff handing money over to another person described by the plaintiff in his complaint as "a disreputable looking individual staring at a slatternly woman seated in the window of a massage parlor." The clear implication from this cartoon was that the plaintiff was instrumental in using private citizens to obtain arrests and convictions of prostitutes. The defendant denied any participation with respect to this cartoon. Exhibit 14 is an article in which it was alleged that the plaintiff "cavorts with whores." The defendant admitted having written this article, but claimed that the word "cavorts" was a mis-type and should have been "consorts." Although "consorts" may have a milder connotation than "cavorts", it makes little difference. Both words leaves a reader with the impression that the plaintiff was associating with prostitutes.

Despite conflicting testimony, this court concludes that many of these articles were either written by the defendant or by Theodore Witheril, who ostensibly was running *The Entertainer* while the defendant was in prison, with the knowledge, participation and approval of the defendant. At all critical times, the defendant was firmly in control of *The Entertainer*.

Some of the articles authored or approved by the defendant may well have been libelous under Wisconsin law. In Wisconsin, in order to establish libel involving a public figure in the media, a person acts with actual malice when such person publishes a defamatory

statement knowing that the statement is false or with reckless disregard of whether it is false or not. Wisconsin JI–Civil Jury Instruction No. 2511. Wisconsin has adopted the criteria established in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *See Torgerson v. Journal/Sentinel, Inc.*, 210 Wis.2d 525, 563 N.W.2d 472 (1997). *See also Polzin v. Helmbrecht*, 54 Wis.2d 578, 196 N.W.2d 685(1972); and *Calero v. Del Chemical Corp.*, 68 Wis.2d 487 228 N.W.2d 737 (1975).

■ But a libel suit is not what is before this court. What is involved is an action seeking a declaration that a debt is nondischargeable. Actual malice under the criteria for proving libel is not the same as malice for § 523(a)(6) purposes. Malice for libel purposes means that the perpetrator knew the statement was false *or* published it with reckless disregard of whether it is false or not. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis.2d 525, 563 N.W.2d 472 (1997); *Dalton v. Meister*, 52 Wis.2d 173, 186, 188 N.W.2d 494, 501 (1971); *Bay View Packing Co. v. Taff*, 198 Wis.2d 653, 543 N.W.2d 522, 534 (Ct.App. 1995). Reckless disregard may be sufficient to establish libel but it is not sufficient to establish maliciousness under § 523(a)(6). The plaintiff must prove more for nondischargeability purposes. He has to show that the defendant knew the articles were false when they were published. *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986); *Martell v. Voltolini (In re Voltolini)*, 48 B.R. 199, 201 (Bankr.D.Mass.1985); *Fincher v. Holt (Matter of Holt)*, 173 B.R. 806, 816 (Bankr. M.D.Ga.1994). The record in this case fails to establish that the defendant knew that any of the articles published were false. His source of knowledge came from information which was supplied to him entirely by Witheril. The defendant's ability to independently verify this information was limited due to his confinement. While his actions may have been in reckless disregard of whether they were false or not and may have been sufficient for libel purposes,[2] they did not rise to

the level of maliciousness for nondischargeability purposes under § 523(a)(6). In *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986), the court declared that "Mere reckless disregard for the truth or falsity of the statement, which can support a libel verdict, is not a willful and malicious injury for purposes of § 523(a)(6)." *See also Materia v. Pereira (In Re Pereira)*, 44 B.R. 248 (Bankr.D.Mass.1984); *Martell v. Voltolini (In Re Voltolini)*, 48 B.R. 199 (Bankr. D.Mass.1985); *Roberts v. Goidel (In re Goidel)*, 150 B.R. 885, 888 (Bankr.S.D.N.Y.1993); *Daniel v. Jenkins (In re Jenkins)*, 70 B.R. 408, 409 (Bankr.N.D.Ga.1987). Significantly, the 7th Circuit has approved of *Wheeler v. Laudani*'s interpretation of § 523(a)(6). Cf. *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994).

## *CONCLUSION*

In the final analysis, some of the articles which were written or approved by the defendant may have been defamatory and not constitutionally protected under the First Amendment as a free expression of ideas and opinions. At worst, they displayed reckless and irresponsible journalism on the defendant's part. But the defendant's conduct did not rise to the level of maliciousness within the meaning and import of 11 U.S.C. § 523(a)(6). What is lacking in this case is sufficient proof to establish that the defendant knew the articles which he wrote or approved were false. The plaintiff has not established by a preponderance of the evidence maliciousness as intended by 11 U.S.C. 523(a)(6). The $5,000 debt in question is therefore discharged.

This decision shall constitute this court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure.

---

2. It is unclear from the record of this case that the defendant's actions were in fact libelous under the *New York Times v. Sullivan* standard. There was no proof presented that the defendant had obvious reasons to doubt the veracity of

Witheril with respect to the information he provided or the accuracy of the information itself. *Torgerson v. Journal/Sentinel, Inc., supra.* However, this is an issue pertaining to libel and is not before the court.